82 FARRAR *v.* PAYNE *et al.* [Sept. T.

Syllabus.

# HENRY W. FARRAR

*v.*

# EUGENE B. PAYNE *et al.*

1. TRUST DEED—*impeaching sale under, for insufficiency of notice.* Where a power of sale was given in a trust deed upon default of payment, *after having advertised such sale ten days* in a public newspaper published in Chicago, and the only evidence to show an insufficient notice was a recital in the trustee's deed that he had duly advertised the property for sale "by publishing a notice in a newspaper published in the city of Chicago aforesaid, *ten days* before the day of such sale, *in the manner prescribed in and by said mortgage deed:*" *Held*, that this recital was not sufficient evidence to impeach the sale, on bill in equity, after the lapse of fifteen years, and after the rights of purchasers had attached, by excluding the idea that the sale was advertised for ten days, as required by the trust deed.

2. Where the regularity of a sale under a trust deed is attacked fifteen years after it happened, and the land has passed into the hands of remote purchasers, the sale should not be defeated because the trustee, in the recitals of his deed of the notice given by him of the sale, may have employed language which fails in precision, or is ambiguous; but it must be made to appear, with reasonable certainty, that the requisite notice was not given.

3. SAME—*effect of trustee purchasing at his own sale.* The fact that a trustee is a purchaser, through another, at his own sale, will not render the sale void. It is only ground for setting aside the sale in equity while in the trustee's hands, but not after its transfer to a *bona fide* purchaser without notice of the equity.

4. SAME—*effect of purchaser transferring note and trust deed.* Where the proceeds of the sale of land amount to less than the note secured, the transfer of it, without any credit being indorsed, and the deed of trust, by the purchaser, on a conveyance of the premises by him, affords no ground for setting aside the sale otherwise fairly made, and the grantee will not be estopped, by taking such assignment of the note and trust deed, from showing a sale under the power.

5. TRUSTEE'S DEED—*as affected by a failure to record the same.* As a trustee's deed, executed under a power of sale in a trust deed, relates back to the execution of the deed of trust, the law does not require that the same shall be recorded, when the trust deed is recorded, in order to protect the grantee against attaching creditors of the original owner, and those claiming under them. The notice of sale is all that is required. The record of the trust deed is sufficient to put all persons on inquiry as to whether a sale has been had under the same.

6. TRUST DEED—*not necessary to name time when note secured matures.*
The fact that a deed of trust fails to show when the note thereby secured matures, will not affect the title acquired under it, as in favor of a purchaser of the equity of redemption, as it may be ascertained when it matures by inquiry of the holder.

7. PLEADING AND EVIDENCE—*proof confined to case made by the pleadings.*
Where a party sets up a claim to equitable relief by his bill, under the seven years' limitation law, without any allegation that he relies on the twenty years' Statute of Limitation, proof of limitation under the latter statute will not be admissible.

8. ATTACHMENT—*a mere equity to set aside a sale not subject to levy and sale under.* Prior to the statute of March 31, 1869, equitable interests in lands were not subject to attachment. Therefore, where a debtor's land had been sold under a deed of trust, even if the trustee was the purchaser, through another, the legal title passed, and the debtor had only an equitable right to avoid the sale, and it was *held*, that no title passed by the levy of an attachment against him upon the land and a sale thereunder.

9. CHANCERY—*removing cloud on title.* Where the question of the validity of opposing claims of title to land is presented by a bill in chancery and a cross-bill, it is not improper, where the court has jurisdiction, to settle the title; and where the defendant shows a connected chain of title from the United States to himself, unless the complainant shows some better title in some way, the defendant will be entitled to a decree finding title in him.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. GOUDY & CHANDLER, for the appellant.

Messrs. SPAFFORD, McDAID & WILSON, and Mr. MELVILLE W. FULLER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, brought in the Cook circuit court, by Henry W. Farrar, complainant, against Eugene B. Payne and others, to redeem a certain tract of land in Cook county, which had been sold by Gibbons, one of the defendants, under a trust deed executed by John W. Sharp to Gibbons, to secure the payment of a promissory note for $654.

Payne filed a cross-bill to set aside, as clouds upon his title, certain deeds under which Farrar claimed title, and, on the

hearing, the original bill was dismissed and the relief prayed by the cross-bill granted.

Farrar takes this appeal to reverse the decree.

Farrar and Payne both claim title through one Sharp—Payne, under the aforesaid trust deed, and Farrar, through proceedings in attachment against Sharp, instituted subsequently to the date and recording of the trust deed.

Farrar claims under Sharp—

1. By levy of a writ of attachment against Sharp, in favor of one Caldwell, September 16, 1857, and certificate of levy recorded October 10, 1857.

2. Certificate of sale to Caldwell, made March 6, 1858, recorded May 21, 1858.

3. Sheriff's deed to Eaton, dated February 20, 1869, recorded March 16, 1869. Assignment of certificate of sale by Caldwell to Eaton.

4. Quit-claim deed from Caldwell to Eaton, dated November 2, 1869, recorded March 16, 1869.

5. Quit-claim deed from Eaton to Farrar, dated March 19, 1869, recorded March 22, 1869.

Payne claims through Sharp—

1. By trust deed, with power of sale, from Sharp to Gibbons, dated May 6, 1856, and recorded same day, to secure a promissory note, of the same date, from Sharp to Gibbons, for the sum of $654, the time of its payment not being mentioned in the deed.

2. Deed from Gibbons to one Cranston, on foreclosure sale, under the trust deed, for the purchase price of $170, dated July 24, 1857, and recorded August 6, 1872.

3. Quit-claim deed from Cranston to Gibbons, consideration $1, dated December 18, 1857, recorded May 10, 1872.

4. Special warranty deed from Gibbons to Weirman, dated March 29, 1872, recorded May 10, 1872, consideration $1500, and receipt for that sum, under signature of Gibbons, attached to the deed.

5. Contract of Weirman to Payne and McDaid to convey

the land, consideration $3100, $2100 paid in cash on contract, dated October 1, 1872.

6. Special warranty deed from Weirman to McDaid and Payne, dated November 1, 1872, filed for record November 13, 1872, consideration $3119.25.

7. Quit-claim deed from McDaid to Payne, dated November 13, 1872, recorded November 21, 1872.

The bill was filed October 28, 1872.

The principal ground upon which the validity of the foreclosure sale under the trust deed is assailed, is, that notice of the sale was not given in conformity with the requirement of the trust deed. That deed authorizes the sale, in default of payment of the note, *after having advertised such sale ten days in a public newspaper published in Chicago.*

The only evidence relied on to show insufficient notice, is, the recital in the trustee's deed to Cranston, which is as follows: "And the aforesaid premises were by the said party of the first part duly advertised for sale, etc., *by publishing a notice in a newspaper printed in the city of Chicago aforesaid, ten days before the day of such sale, in the manner prescribed in and by said mortgage deed.*" We do not regard the language of this recital as excluding the idea that the sale was advertised ten days, as required by the trust deed. We are aware that in *Weld et al.* v. *Rees*, 48 Ill. 428, where the sale was authorized, "after publishing a notice, in a newspaper published in the city of Chicago, ten days before the day of such sale," it was held, that the language did not require nor import that the notice should be published by ten daily insertions, and that one insertion ten days before the day of sale would answer the requirement; but the question there was as to what notice was required by the terms of the trust deed. It was questionable whether ten daily insertions had been made, and the court sustained the sale which had been made, by adopting the construction it did, that the trust deed did not require ten daily insertions. But the question here is different. It is, whether this recital shows that there was not such notice given as was required by the trust deed.

We are of opinion that it consists with the language of that recital, that the "ten days" mentioned was either the period of time before the day of sale at which the notice was published, or that it was the number of days on which the notice was published before the day of sale; that it may mean either the one or the other; that the language fairly admits of that interpretation, and that if the language raises a doubt in this respect, the doubt should be resolved in favor of the sufficiency of the notice, as conforming with the requirement of the trust deed. To help this, there would be the presumption that the direction of the trust deed would be followed, and the whole language of the recital to be taken together, which is, that the advertisement was "by publishing a notice in a newspaper printed in the city of Chicago aforesaid, ten days before the day of the sale, *in the manner prescribed in and by said mortgage deed.*" Where the regularity of a sale is attacked at this period of time—fifteen years afterward—and the land has passed into the hands of remote purchasers, the sale should not be defeated because the trustee, in his recital in his deed of the notice he had given, may have employed language which failed in precision of expression. It should, at least, be made to appear, with reasonable certainty, that the requisite notice was not given. We can not think that it does so here appear from the recital in the trustee's deed.

Another objection taken is, that Gibbons bought at his own sale, and, for that reason, the sale ought to be set aside.

It is unnecessary to consider whether the evidence establishes that Gibbons did so buy. That fact would not render the sale void. It would only be voidable, subject to be set aside while the estate was in Gibbons' hands, but not after its transfer to a *bona fide* purchaser. *Robbins* v. *Bates,* 4 Cush. 104; *Hamilton* v. *Lubukee,* 51 Ill. 415.

It is claimed that Payne does not fill that character, as he had paid only $2100 of the $3100, his purchase price from Weirman, before the filing of the bill, and did not obtain his deed until after that time; but the same can not be said of Weirman, who was the grantee of Gibbons before the institu-

tion of the suit; and if the sale could not have been set aside as against Weirman, neither can it be as against Payne, claiming under Weirman.

It is made a point that, at the time of the conveyance from Gibbons to Weirman, March 29, 1872, Gibbons assigned the note and trust deed to Weirman, and that there is no indorsement upon the note of any payment on it. As the proceeds of the sale amounted to only a small portion of the amount of the note, it was proper that the note should be kept on foot, and held as a valid subsisting security against Sharp for the amount remaining unpaid, and Gibbons had the right to sell and transfer the note. The trust deed was a muniment of title which might properly have been handed down to Gibbons from his grantor, Cranston, and by Gibbons to Weirman. It does not appear that there was any virtue in the assignment of the trust deed after it had been foreclosed by a sale; but Gibbons saw fit to make the assignment, with what view, if any, more than that the parties might have thought it an act properly to be done in the transfer of the title, we have no means of knowing.

The omission to credit on the note the proceeds of the sale, is not a circumstance which can detract from the effect of the sale. Had there been a question as to whether there had, in fact, been a sale under the trust deed, then the assignment of the trust deed and the absence of a credit on the note would have been circumstances tending to show that there had been no sale; but that there were a foreclosure, sale and conveyance to Cranston, and a reconveyance by Cranston to Gibbons, are undisputed facts in the case. It is asserted that, at the time the bill was filed, there appeared the *assignment* of the trust deed to Weirman, and the complainant's right of redemption was clear. The reason why is not shown, and it is not apparent.

It is not perceived why the assignment of the trust deed should estop Weirman, and those claiming under him, from setting up the fact of a sale under the deed, or should operate to cancel the sale.

The deeds from Gibbons to Cranston, and from Cranston to Gibbons, having remained so long unrecorded, it is insisted that, for that reason, Farrar's title should take precedence.

Sharp had but an equity of redemption. At the time Caldwell, the attaching creditor, levied his writ of attachment, the sale under the trust deed had already been made and the equity of redemption extinguished. There was no duty resting upon either Cranston or Gibbons to give notice of the purchase and sale to Sharp or those claiming the equity of redemption under him, either by the recording of the trustee's deed from Gibbons or otherwise. The trust deed had been recorded previous· to the attachment, and that was enough. The published notice of the sale was all the required notice of any proceeding under the trust deed. The recording of the trust deed gave notice of its existence to subsequent claimants of the equity of redemption, and pointed out the source of information of what might be done in pursuance of the deed, and they were bound to take notice of the proceedings thereunder. The title of Cranston related back to the execution of the deed of trust. The subsequent proceedings under the deed of trust were connected with and in aid of the title conveyed by that deed. *Williams* v. *Brunton,* 3 Gilm. 600; *State Bank* v. *Wilson,* 4 id. 57; *Kruse* v. *Scripps,* 11 Ill. 98.

Of a similar nature is the objection that the trust deed did not mention the time of payment of the note, and subsequent purchasers of the equity of redemption could not know that the note was due; but that could have been ascertained, if needed, by resort to Gibbons, the holder of the note. On its production, the note appears to be one payable one year and ten days after its date.

We are of opinion that the proceeding of foreclosure under the trust deed constitutes a complete bar to the equity of redemption. This view renders it unnecessary to consider the various objections made to complainant's title derived through the attachment proceedings, going to deny his right to redeem, even had the equity of redemption not been barred.

The complainant made a further claim of title under one Dyer, and it is made a ground of objection that the court below over-ruled a motion for a continuance in order to procure the testi-mony of Dyer, who was in Europe, to prove his possession of the land for twenty years. There was no allegation in the bill that the complainant relied upon the twenty years' Statute of Limitation, but the seven years' limitation only was set up.

The evidence of Dyer, then, would seem not to have been competent, and we think, also, the affidavit for the continuance failed to show the use of due diligence to obtain the testimony.

It is further urged that there was error in the decree upon the cross-bill, in setting aside the deed from Lincoln and For-sythe to Farrar. This conveyance, as appears from the evi-dence, was of a claim of title derived from one Cline, who had a tax claim on the land. There is no attempt at proof of the validity of Cline's claim of a tax title to the land. This court has, in repeated instances, set aside invalid claims of tax titles to land, as clouds upon the title. We find no error in this respect.

Perceiving no error in the record, the decree is affirmed.

*Decree affirmed.*

A rehearing having been granted in this case, the following additional opinion was filed :

Mr. JUSTICE SHELDON: A rehearing having been granted in this case, a reargument has been had and the cause further considered.

The decision of the case, by the former opinion, was rested mainly on the ground that Weirman, a prior grantee in defend-ant's chain of title, was a *bona fide* purchaser for a valuable consideration.

It is suggested that there was an error in that opinion in considering a certain receipt there adverted to as evidence upon the question of payment of the purchase money by Weir-man. It admits of doubt whether the proof was sufficient of the payment of such purchase money, but, as we find another

satisfactory ground for arriving at the same conclusion, we will not further consider the question as to the sufficiency of such proof.

Gibbons, the trustee in the trust deed from Sharp, sold the land to Cranston, under the power contained in the trust deed, on June 17, 1857, for $170. Three months after this sale, September 16, 1857, Caldwell levied his attachment writ against Sharp upon the land, as the land of Sharp. Admitting it to be true, as claimed by appellant, that the sale by the trustee, Gibbons, was a sale indirectly to himself, through the agency of Cranston, such sale passed the legal title to Cranston. The sale would not have been void, but the purchaser would have taken the legal estate subject to the equity of having the sale set aside, if the owner of the equity of redemption at the time of the sale, himself, in a reasonable time, chose to say he was not satisfied with it, on his filing a bill in chancery for the purpose. 1 Perry on Trusts, sec. 334; 2 id. 602, sec. 787; *Campbell* v. *Walker*, 5 Vesey, 680 ; *Jackson* v. *Walsh*, 14 Johns. 406; *Charles* v. *Dubose*, 29 Ala. 367; *Rice* v. *Cleghorn*, 21 Ind. 80 ; Hill on Trustees, 536 ; *Thorp* v. *McCullum*, 1 Gilm. 614.

Sharp, the maker of the trust deed, never exercised any option he might have had to avoid the sale by Gibbons to Cranston, but, for aught that appears, has ever been content therewith. It follows, then, that, at the time of the levy of Caldwell's writ of attachment, Sharp had but an equity in respect to the land. The legal title was in Cranston, under the sale and conveyance to him by Gibbons.

The law is settled in this State that, prior to the statute of March 31, 1869, upon this subject, equitable interests in land were not subject to attachment. *Lowry* v. *Wright*, 15 Ill. 95; *West* v. *Schnebly*, 54 id. 523; *May* v. *Baker*, 15 id. 91.

Farrar, the appellant, then, acquired no title or interest in the land under the attachment proceedings.

It is urged that the relief granted Payne on the cross-bill, in setting aside the deed from Forsythe and Lincoln to Farrar, as a cloud on Payne's title, was erroneous, for want of evidence

that the deed did not convey a valid title; that it was for Payne to prove that the title purported to be conveyed by the deed was invalid, and not for appellant to show it to be valid. The original bill alleged that Farrar held the title to the land through the attachment proceedings, and, also, by purchase from Lincoln and Forsythe; that Farrar entered into possession under the deed from Lincoln and Forsythe, who had theretofore been in possession under claim and color of title for the eight years immediately preceding September, 1871, and had paid all taxes thereon for seven years prior thereto; that, afterward, Payne took possession as a trespasser, and retains possession as such.

The cross-bill of Payne set up that he was the owner in fee of the land; that no title passed to Farrar by virtue of the deed from Lincoln and Forsythe, and prayed for its removal as a cloud upon Payne's title.

Payne showed, by the proof, a connected chain of title from the United States to himself, in fee simple. Unless the appellant could show some better title, in some way, Payne's title would prevail, and he would be entitled to a decree finding title in him. The deed of Forsythe and Lincoln was not connected with any source of title, and was merely a color of title, available of, only, under some limitation law, or as showing the extent of any actual possession. No bar by limitation was established or attempted to be established. The title to Payne, derived from the United States, was sufficient evidence to found the decree upon as against any claim of title under this deed from Lincoln and Forsythe, and, as a consequence, it would seem to have the deed thus interposed disposed of as a cloud upon the title of Payne. The decree does not purport to set aside any tax title, but adjudges the title to the land to be in Payne, and decrees that the deed from Forsythe and Lincoln to Farrar, as well as the other deeds to the latter under which he claims title, are clouds upon Payne's title, and are null and void against it. We see no error in this.

It is urged that Farrar was a trustee of Mrs. Eaton, in taking this deed to himself from Lincoln and Forsythe, and that she

should have been made a party. If he was such trustee, she was represented by him in court.

In all other respects, we adhere to our former opinion, not finding sufficient reason, upon further consideration, to vary therefrom, and the decree of the court below is affirmed.

*Decree affirmed.*