## ALBERT T. TERRY et al., Appellants, v. LEONARD D. GROVES et al.

### Division Two, May 26, 1914.

1. **CONVEYANCE: Assuming Incumbrance: Principal Debtor.** One who upon a conveyance to him of real estate encumbered by a deed of trust assumes and agrees, as part of the consideration, to pay the debt, becomes the principal debtor as to the encumbrance.

2. **MORTGAGE: Foreclosure: Purchase by Trustee.** Under a will a daughter of the testator received an undivided one-third of encumbered land for life, remainder in fee to her children (the plaintiffs), and took another third because as to it her father died intestate. The remaining third passed under the will to the plaintiffs in fee, subject to the control of their parents during their minorities. Upon foreclosure of the trust deed the daughter bought in the property. *Held,* that she took subject to the equity of the children to acquire their respective interests on paying their proportion of the encumbrance.

3. **WILLS: Record: Notice: Chain of Title.** Where plaintiffs took title to encumbered realty under their grandfather's will,

which was filed for record, they are chargeable with notice of the contents of the will and of all facts in the record of their chain of title, including the fact that the deed of trust contained a power of sale; that the land was subject to sale under such power, and that the purchaser might sell, improve or subdivide the land.

4. **LACHES: Suit to Quiet Title.** Encumbered realty having been willed to testator's daughter with remainder in a part to her children, the plaintiffs, she bought the property at the foreclosure sale under the deed of trust, and having thus acquired the legal title, she sold the land to S, whose grantee in turn conveyed to a realty company. Thereafter the land was platted, lots were sold and improvements placed thereon. All these things were of record, yet plaintiffs did not sue on the ground that their mother's purchase inured to their benefit under the will, until twenty years after the mother's purchase and eight years after the youngest of the plaintiffs reached his majority. Meanwhile the land had become city property and had grown greatly in value, both on account of a general rise in value and because of improvements placed thereon by defendants and those under whom they claimed. *Held*, that the plaintiffs are barred by laches from maintaining a suit for any interest in the land.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Randolph Laughlin* for appellants.

(1) By the trustee's sale and deed to Mrs. Terry, she acquired no title as against her children, either to the undivided third in which she had a life estate and her children the remainder in fee, or to the undivided third vested in her children, but subject to her fiduciary control. The purchase by her inured to their benefit, and after the termination of her life estate in the one-third, and of her fiduciary control over the other third, they could recover the land in ejectment against her grantee. As to this undivided two-thirds, Mrs. Terry held a trust relation towards her children, and could not purchase it for her exclusive benefit, but was bound to hold for them whatever she pur-

chased, and to account to them for the same as such trustee. Allen v. DeGroodt, 98 Mo. 161. (2) At the time of the conveyance from Mrs. Terry and her husband to Schureman, in 1887, the public records showed that she had title by virtue of two instruments, viz.: The trustee's deed executed under the power of sale in the deed of trust from herself and husband; and the will of Albert Todd. Schureman was charged with notice of both of these sources of title. He could not disregard the one because the other looked better to him and seemed perfect. He must examine both, and consider every question that either would suggest, and was, therefore, charged with notice that after the execution of the deed of trust by Mr. and Mrs. Terry they had conveyed to Todd, and he had assumed the deed of trust, and by virtue thereof had become primarily liable; further, that Mr. Terry had become the legal holder of his own note, and as such had procured the trustee's sale to be made; further, that Mrs. Terry had on the face of the record become the purchaser of all the title that she and her husband had had at the time of the execution of the deed of trust, and of all that they had conveyed to Todd, and of all that Todd had devised by his will, including the interests of her children, and her own interests. (3) As to the one-third of the real estate which was either devised by implication to Mrs. Todd, or which was at least reserved during her lifetime as subject to her dower, and which is referred to in Todd's will as "the life estate of my wife," with remainder over to appellants, appellants have never had any right of entry, and will have none until Mrs. Todd's death, or until her rights in the land are debarred by appropriate legal action. Adverse possession being an affirmative defense, the burden rested on respondents to show every element necessary to make out such defense, and their failure to show that Mrs. Todd's rights in the land in suit ever had been barred is fatal

to their defense, because, on the face of Todd's will, appellants had no right of entry until the death of Todd's widow. It follows that it was error for the court to decree that appellants were barred as to this third. (4) As to the remaining two-thirds: Plaintiffs were the owners in fee of one undivided third at the time of the conveyance to Schureman, in 1887. They became the owners of the other undivided third at the death of Mrs. Terry in April, 1888. The Statute of Limitations could then begin to run, and after ten years could bar their rights, except for their disability or minority. The youngest of them became of age more than three years before the commencement of this suit, so that the questions, with respect to this two-thirds of the real estate in controversy, are these: (a) Are the defendants in a position to avail themselves of the defense of the statute? (b) Does the evidence sustain the defense?

*J. C. Kiskaddon, A. H. Kiskaddon* and *R. H. Stevens* for respondents.

(1) The sale under the Terry-Coles deed of trust to Elizabeth T. Terry conveyed to her a complete title in fee to the real estate described therein. And her subsequent conveyance to Schureman conveyed to him her title discharged of any personal trust in her of which she may have committed a breach. Orrick v. Durham, 79 Mo. 179; Wayman v. Jones, 58 Mo. App. 318; Nelson v. Brown, 140 Mo. 590; Pratt v. Conway, 148 Mo. 296. (2) Schureman purchased and paid for the property without notice either actual or constructive of any breach of trust on the part of his grantor, Elizabeth T. Terry, and there is no evidence in the record in this case that any breach of trust was committed by her. The only notice he could have had was notice that his grantor was a life tenant in one-third of the property. (3) Plaintiffs and appellants in law

·and equity are barred by the statute of limitations. R. S. 1909, secs. 1881, 1883; Ogle v. Hignet, 161 Mo. 51; Gray v. Gates, 67 Mo. 601; Wheelock v. Oversheimer, 110 Mo. 113; Hinters v. Hinters, 114 Mo. 30; Reed v. Painter, 145 Mo. 355; De Hatre v. Edmonds, 200 Mo. 273. A temporary absence or casual break in the actual possession, provided there is left on the land the visible marks of the claim of ownership, is insufficient to constitute a break in the continuity of possession. A voluntary absence of that kind *animo revertendi* does not break the continuity of possession. Crespon v. Hannover, 50 Mo. 549; Turner v. Hall, 60 Mo. 275; Bartlett v. O'Donahue, 73 Mo. 563; Pimm v. St. Louis, 122 Mo. 655. (4) Under the circumstances disclosed by the evidence in this case plaintiffs and appellants, even though the Statute of Limitations may not have run against all of them, are barred in equity by their laches in failing to assert their rights, if any they have. Hammond v. Hopkins, 143 U. S. 224; Prevost v. Gratz, 6 Wheat. (U. S.) 481; Lansdale v. Smith, 106 U. S. 392; Harwood v. Railroad, 17 Wall. (U. S.) 81; Badger v. Badger, 2 Wall. (U. S.) 95; Ready v. Smith, 170 Mo. 174; Davidson v. Mayhew, 169 Mo. 267; Baker v. Cunningham, 162 Mo. 144; Wall v. Beedy, 158 Mo. 213; Loomis v. Railroad, 165 Mo. 490; Becht v. Becht, 168 Mo. 532; Lindell v. Lindell, 142 Mo. 78; Goodson v. Goodson, 140 Mo. 216; Bobb v. Wolff, 148 Mo. 348; Hatcher v. Hatcher, 139 Mo. 626; Landsum v. Bank, 63 Mo. 56; Smith v. Washington, 11 Mo. App. 519, 88 Mo. 475; Burgess v. Railroad, 99 Mo. 508; Kroenung v. Goehri, 112 Mo. 648; Moreman v. Talbot, 55 Mo. 392; Kline v. Vogel, 90 Mo. 247.

ROY, C.—On May 6, 1902, the Overland Park Real Estate Company filed in the office of the recorder of deeds of St. Louis county a plat of East Overland Park, a suburb of St. Louis. It contained 54.92 acres,

and was by the plat subdivided into lots, blocks, streets and alleys. Many of the lots were thereafter sold to separate purchasers, many of which were built upon by the several purchasers. On April 15, 1905, a large number of those lot owners began a suit against the plaintiffs herein, entitled Groves v. Terry, to try the title to said land. There was a decree for the defendants in that case. The trial court granted a new trial, and, on appeal, the action of the court in granting such new trial was affirmed. [Groves v. Terry, 219 Mo. 595.] Pending that appeal this suit was begun on April 21, 1906. By order of the trial court made before the trial of this cause the two suits were consolidated. The plaintiffs in the first suit are not all the same as the defendants in this, but no point is made on that fact by either party, nor is any objection made on the ground that several separate causes of action against several parties have been united in one suit against those parties jointly. In this case there was a decree for defendants, and plaintiffs have appealed.

The first count is ejectment for all the land in East Overland Park. The second count is, so far as necessary to be stated, as follows:

"For a second and separate statement of their cause of action against defendants, plaintiffs allege as follows:

"That on July 20, 1876, John H. Terry and his wife, Elizabeth Todd Terry, were the owners of the ground described in the first count of this petition. That on said date said John H. Terry and his said wife, by their deed of trust of that date, conveyed said ground to Albert Todd in trust for Edward and Mary Coles, to secure the payment of a principal note of that date, drawn for $6000, and by its terms made payable three years after date, together with six interest notes, payable semi-annually. That said deed of trust was duly recorded on the —— day of July, 1876, in the

office of the recorder of deeds within and for the city of St. Louis in book 548, at page 536.

"That afterwards, and on November 22, 1883, said John H. Terry and his said wife conveyed all of said land to said Albert Todd by their warranty deed of that date for a consideration of $5400. Said warranty deed was on the —— day of November, 1883, duly recorded in the office of the recorder of deeds of the county of St. Louis, in book 22, page 229. That said conveyance was by its terms made subject to the said prior deed of trust, which it recited, and which the said Albert Todd, by the terms of said warranty deed to him, and by his acceptance thereof, assumed and agreed to pay as part of the consideration of said deed.

"That by said warranty deed said Albert Todd acquired the title to said property.

"That on Apri 30, 1885, said Albert Todd died, leaving his last will and testament, which was dated May 6, 1876, and was duly probated, and was recorded on May 7, 1885, in book 27, page 524, in the office of the recorder of deeds and wills of the county of St. Louis. That said will is the will by virtue of which these plaintiffs claim to have derived their title to said property, and is the same will of which a duly certified copy is herewith filed as plaintiff's exhibit 1.

"That said Albert Todd died solvent, leaving much real estate, and a personal estate worth in excess of $80,000 above and beyond all liabilities, and upon his said will being probated the said John H. Terry duly qualified as sole executor of his said estate, and as such continued to administer said estate until his final discharge as such executor in or about July, 1887. That said Albert Todd was survived by his widow, Mary C. J. Todd, and by his daughter, Elizabeth Todd Terry, and these four plaintiffs, who were and are the only children of said Elizabeth Todd Terry, and of her husband, the said John H. Terry,

and who were and are the grandchildren of said Albert Todd and his wife, Mary C. J. Todd. The said Elizabeth Todd Terry was the only child of the said Albert Todd.

"That the third clause of the said will of Albert Todd devised to the said Elizabeth Todd Terry (therein called Elizabeth Helen, wife of John H. Terry, Esq.) the use and enjoyment of one undivided third of all the real estate of the testator including the real estate in suit, for her exclusive use and behoof during her natural life, with remainder over in fee to her children, these plaintiffs. That said will devised to these plaintiffs (therein designated as the children of the testator's daughter living at the time of his death) one undivided third of said realty in fee. That said will further devised the remaining third of said real estate, upon the termination of the life estate of the widow of the testator therein, to these plaintiffs (therein designated as the children of the testator's daughter). That the third paragraph of said will further provided that until the death of the testator's said daughter, the realty vested in these plaintiffs as her children should not be divided among them by partition, by deed, or by the courts, without the consent of the testator's said daughter, Elizabeth Todd Terry, expressed as therein provided.

"That the fifth paragraph of said will authorized and empowered the said Elizabeth Todd Terry and her husband, the said John H. Terry, and the survivor of them, to manage the realty acquired by their children, these plaintiffs, under said will; to collect the rents and from them to pay all taxes and assessments, general and special, from time to time chargeable, and all expenses for needful repairs, etc.

"That the sixth paragraph of said will provided that in order to preserve a proper dependence of said children (these plaintiffs), and their descendants upon their parents and the survivor of them, the testator's

devises to said children (these plaintiffs) were thereby made subject to the foregoing powers, and to the express condition that the testator's said daughter, Elizabeth Todd Terry, and her husband, the said John H. Terry, and the survivor of them, should not be made liable for or compelled, beyond the wish and pleasure of them, and of the survivor of them, to account for the rents and profits of said realty, or any part thereof, to anyone of their said children (these plaintiffs), until he or she became of age or married, and then only for his or her proper share thereof, accruing and received therefrom after his or her majority or marriage; Provided, however, that they and the survivor of them should properly maintain, support, and educate them each, till his or her majority or marriage, and manage and preserve their realty. And plaintiffs show the court that the said will created a trust relation between these plaintiffs and their said parents with respect to the subject-matter of said realty, and that the said John H. Terry and the said Elizabeth Todd Terry were trustees, and each of them was trustee, of said trust, and that these plaintiffs were the beneficiaries thereof to the extent and in the manner provided by the said will.

"The plaintiff Albert T. Terry was born on December 19, 1869, and became of lawful age on December 19, 1890.

"The plaintiff Robert J. Terry was born January 24, 1870, and became of lawful age on January 24, 1891.

"The plaintiff John H. Terry, Jr., was born on November 27, 1873, and became of lawful age on November 27, 1894.

"The plaintiff Howard L. Terry was born on January 4, 1882, and became of lawful age on January 4, 1903.

"All of the plaintiffs were living at the time of the death of the said Albert Todd,

"On February 15, 1886, Herman A. Haeussler, at the request of said John H. Terry and Elizabeth Todd Terry, petitioned the circuit court of St. Louis county, reciting that Albert Todd was dead, that Robert C. Allen, the sheriff of St. Louis county, disclaimed the right and refused to act as trustee in place of said Albert Todd, deceased, under the deed of trust first above mentioned from John H. Terry and wife to said Albert Todd, in trust for said Edward and Mary Coles, (dated July 20, 1876), wherefore the petitioners prayed the court to appoint William F. Broadhead as trustee to execute the trust declared in said deed of trust, and on said petition said William F. Broadhead was appointed.

"On March 16, 1886, said Broadhead foreclosed said deed of trust, at public sale, and sold the property therein described (and involved in this suit) to said Elizabeth Todd Terry for a consideration of three thousand dollars. The trustee's deed from said Broadhead as trustee to said Elizabeth Todd Terry, recites that the sale was advertised for twenty days in the Missouri Republican, in the city of St. Louis, beginning February 24, 1886, and recites that the consideration paid by the said Elizabeth Todd Terry was three thousand dollars. The purpose of said foreclosure sale was to clear the title to said property in said Elizabeth Todd Terry. Said trustee's deed was afterwards recorded in book 30, at page 329, in the recorder's office of the county of St. Louis.

"At the time of said sale, and at. all times prior thereto, and thereafter until the year 1901, the said land was vacant county property and uncultivated.

"After the said foreclosure sale the said John H. Terry, as sole executor of the estate of said Albert Todd, paid said Edward and Mary Coles with moneys out of said Todd's personal estate, in his hands as such executor, the said principal note of six thousand dollars so secured by said deed of trust, together with

all unpaid interest notes, and with all interest due on all, and also the expenses of foreclosing the said deed of trust. This was the only money actually paid on account of said indebtedness, and was at the time treated and agreed by all parties concerned as including the payment of three thousand dollars paid by said Elizabeth Todd Terry at said foreclosure sale.

"Thereafter, and on March 30, 1887, said Elizabeth Todd Terry and said John H. Terry, her husband, by their warranty deed of that date, sold and conveyed said property (being the property involved in this suit) to Joseph P. Schureman, who thereafter, and in 1893, conveyed the title so acquired by him in due form to James McCausland, who thereafter, and in 1894, conveyed said same title to the Overland Real Estate Company, which company thereafter, in 1901, and in connection with the Mississippi Valley Trust Company of the city of St. Louis, platted said property as East Overland Park, and sold and conveyed lots therein to the defendants, and to each of them, or to the predecessors in title of each, by warranty deed made to each. By virtue of said warranty deeds from said Overland Real Estate Company to the defendants, defendants have acquired and now hold all the title to said property which was conveyed by deed from Elizabeth Todd Terry and John H. Terry, her husband, to Joseph P. Schureman, dated March 30, 1887, as above stated. Attached to this petition, and made a part hereof, is a blue print plat of the property in suit, platted as East Overland Park as aforesaid. That these plaintiffs deny that the platting of said property as East Overland Park was of any validity, but the defendants, nevertheless, claim under the subdivision evidenced by said plat, and as such are in the common possession of all of the streets and avenues shown on said plat, and withhold the same from the plaintiffs herein. That in addition to the possession

aforesaid the defendants are severally, and not joint-
ly, in possession of divers and sundry parcels of the
land in suit, the parcels so possessed by each being
designated as lots upon said plat, the position of each
defendant being indicated on said plat by his name
appearing upon the parcel or lot so in his possession.

"The said Elizabeth Todd Terry died on the 14th
of April, 1888, and thereafter administration was had
upon her estate, and final settlement therein filed and
approved, and the administrator duly discharged, and
the administration of said estate fully and finally
closed on or about July 15, 1890, all before the institu-
tion of this suit.

"That final settlement was filed in the estate of
said Albert Todd on July 12, 1887, which at the time
showed and still shows the payment by said John H.
Terry as executor of said estate, and with the
moneys of said estate, of the said principal note of
six thousand dollars, and interest notes secured by
said deed of trust, dated July 20, 1876, and assumed by
said Todd by said warranty deed to him from said
John H. Terry and wife, dated December 22, 1883.
Said final settlement was duly approved by the probate
court, and said John H. Terry, the sole executor there-
of, was duly discharged by said court, and the adminis-
tration of said estate was fully and finally closed, all
before the bringing of this suit. That said John H.
Terry and said Mary C. J. Todd are still living, and
that each of them disclaims all and all manner of
interest in the property in suit.

"Plaintiffs further show the court that by virtue
of the facts aforesaid, and the provisions of the will
of said Albert Todd, the said Elizabeth Todd Terry
stood in a fiduciary relation to these plaintiffs with
respect to the property in suit at the time of the
foreclosure sale thereof, and the proceedings had in
connection therewith, during and throughout the
months of February and March, 1886. That because

of such relation the outstanding claim of title purchased by her to the subject-matter of her trust at the foreclosure sale held on or about March 16, 1886, inured to the benefit of these plaintiffs, and whatever title, if any, vested in the said Elizabeth Todd Terry under the trustee's deed executed to her pursuant to such sale was held by her as trustee of a constructive trust for the use and benefits of plaintiffs; that the record of said Todd's will on May 27, 1885, imparted notice to the said Schureman and to all persons claiming under him of the legal purport and effect of said will, including the fact that thereby the said Elizabeth Todd Terry stood in a fiduciary relation to plaintiffs and was disqualified from acquiring an adverse title against them; that such constructive notice wholly destroyed all claim or pretense on the part of the said Schureman and his successors in title of being innocent purchasers in law, and such notice subordinated said Schureman title to the title of these plaintiffs.

"Plaintiffs further state that if the said trustee's deed from Broadhead to Elizabeth Todd Terry was of any validity in law, which plaintiff's deny, then that the legal title to the property in suit is now vested in the defendants, as to each parcel of land occupied by each defendant as aforesaid, and as indicated on the plat hereto annexed, but that each defendant holds such legal title as trustee of a constructive trust of which these plaintiffs are the joint beneficiaries; but that if such trustee's deed was inoperative to pass the legal title, then that the legal title as well as the equitable title is well and truly vested in the plaintiffs. That both plaintiffs and defendants desire to avoid a multiplicity of suits by trying and determining the title to the property in suit as a whole, in one and the same proceeding. That that portion of the real estate described in the first count of this petition, and involved in this suit, which is not in the actual possession of the defendants, is partly vacant, and is partly

in the possession of other persons whose names are to these plaintiffs unknown. That these plaintiffs do not now know what portions of the real estate in suit, other than those portions in the present actual possession of the defendants as aforesaid, are occupied, and what portions are vacant. That those portions of the real estate described in the first count of this petition which are not in the actual possession of the defendants, as aforesaid, yet constitute a part of the subject-matter of this petition, and that there are, or plaintiffs verily believe there are, persons interested in such subject-matter of the petition whose names these plaintiffs cannot insert herein because they are unknown to plaintiffs. That the interest of such persons is this: That each one of them claims to be the owner of some parcel or lot of ground designated as a lot on the annexed plat, and not marked as a lot in the possession of some one of the defendants; that such interest has been derived by each of such unknown parties, so far as plaintiffs' knowledge thereof extends, by purchases, through mesne conveyances, from the said Schureman and those claiming under him in like manner as the claim of title of the several defendants has been derived from said same source.

"Plaintiffs further state that the defendants have committed great waste and trespass upon the said real estate so in their possession, in this; that they have constructed divers and sundry buildings upon it, all of which are of such character as to depreciate and cheapen the value of the land. That said buildings are of such character that they may be readily removed therefrom. That plaintiffs desire said buildings to be removed from their said land and desire that defendants be afforded a reasonable time in which to accomplish such removal; nevertheless, if the court should think that equity require the plaintiffs to accept said buildings, and pay their value notwithstanding the fact that said buildings are of no value to the plain-

tiffs and are not desired by the plaintiffs, yet plaintiffs offer to pay and will pay to the defendants, in such proportions as may be adjudged by the court, such sum or sums as the court may hold to be necessary to the doing of whatever equity the court may require to be done as conditions precedent to the granting of equitable relief in the event the court shall hold equitable relief to be necessary therein.     And plaintiffs offer to pay any and all taxes that have been paid by the defendants, and by their predecessors in title, on any of the land in suit, but not upon the improvements thereon, unless required by the court so to do.

· "Wherefore these plaintiffs pray the court to try and determine the estate, title, and interest of the parties respectively in the said real estate described in the first count of this petition, and to define     and adjudge by its judgment and decree, the title, estate, and interest severally in and to the said property, and to adjudge that the trustee's deed from William F. Broadhead, trustee, to Elizabeth Todd Terry, of date March 16, 1886, was and is of no validity or effect, and that the plaintiffs are the owners of the fee simple title to the said real estate, and that the defendants are without right, title, or interest therein or thereto, or to any part thereof; or, failing that, then that the court adjudge and decree that the said trustee's deed passed only the legal title to such real estate to Elizabeth Todd Terry, and that it passed the same in trust for these plaintiffs as to one- third outright, and as to one-third upon the death of said   Elizabeth   Todd Terry, and as to the remaining third upon termination of the life estate of Mary C. J. Todd therein, and that these plaintiffs succeeded to the equitable title to that one-third wherein the said Elizabeth Todd Terry had a life estate upon the death of the said Elizabeth Todd Terry on April 14, 1888, and that these plaintiffs succeeded to the title to that one-third wherein the said

Mary C. J. Todd held the life estate upon the disclaimer of said Mary C. J. Todd of and to all interest therein; or, if the court shall find that the interest of the said Mary C. J. Todd has not terminated as to said one-third, then that these plaintiffs hold a vested remainder in said one-third to vest in possession upon the death of the said Mary C. J. Todd; and that the defendants are not innocent purchasers without notice of the equitable title of these plaintiffs, but that they are, and that each of them is, a purchaser with constructive notice of such title, and that as such purchaser each of the defendants holds the legal title to the part so purchased by him as trustee of a constructive trust for the use and benefit of these plaintiffs; and that such legal title, if any, so vested in the defendants, be divested out of the defendants and well and truly vested in these plaintiffs jointly or in such manner as the court may deem right and just; and that the defendants may be required within a reasonable time, to be fixed by the court, to remove from said property all and all manner of buildings and building material placed by them upon it, or, failing that, that money damages be adjudged in favor of plaintiffs and against the defendants for depreciation in the value of said land, and damage thereto, caused by the construction of such buildings thereon; and that an accounting may be had and taken between the parties hereto; (1) of all taxes paid by defendants, and by their predecessors in title, upon the land value of the land in suit, apart from its improvements, to the end that these plaintiffs may pay the ascertained aggregate thereof to the parties entitled thereto; (2) of the value of the use and occupation of said premises while the same have been in the actual use and occupation of the defendants, to the end that these plaintiffs may recover the actual value of the use and occupation of their interest therein; and (3) of the depreciation

258 Mo.—30

in the value of the land caused by the waste which the defendants have committed upon it; and that a money judgment be rendered in favor of the parties in whose favor the balance of such accounting may be found.''

The deed of trust from the Terrys to the Coles recited that it was made to secure to each of the Coles a principal note of $3000 with six interest notes to each.

The Overland Park Real Estate Company was on its motion made a defendant. The defendants filed a joint answer, of which that portion applicable to the second count is as follows:

''For answer to the second cause of action in said amended petition, defendants admit that on the 20th day of July, 1876, John H. Terry and his wife, Elizabeth T. Terry, conveyed the real estate described in the first count of said amended petition to Albert Todd, in trust for Edward and Mary Coles, to secure the payment of principal notes in the sum of $6000, together with several interest notes payable semi-annually; that said principal notes were made payable three years after date; that said deed of trust was recorded in the office of the recorder of deeds within and for the city of St. Louis, in book 548, at page 536.

''Admit that on the 2nd day of November, 1883, the said John H. Terry and Elizabeth T. Terry, his wife, conveyed all of said real estate to the said Albert Todd by their warranty deed of that date for a consideration of $5400; that said deed was recorded in the office of the recorder of deeds of St. Louis county, in book 22, at page 229; that said conveyance was by its terms made subject to the said prior deed of trust, which it recited, and which said Albert Todd, by the terms of said warranty deed to him, and by his acceptance thereof assumed and agreed to pay as part of the consideration of said deed.

"Admit that on April 30, 1885, said Albert Todd died, leaving his last will and testament, which was duly probated and is recorded in book 27, at page 524, in the office of the recorder of deeds of St. Louis county, Missouri.

"Admit that the said John H. Terry duly qualified as sole executor of said last will, and as such continued to administer the estate of said Albert Todd, deceased, until his final discharge; that said Albert Todd was survived by his widow, Mary C. J. Todd, and by his daughter, the said Elizabeth T. Terry, and by the plaintiffs, who are the only children of said Elizabeth T. Terry and her husband, the said John H. Terry, and who are the grandchildren of the said Albert Todd; that the said Elizabeth T. Terry was the only child of said Albert Todd.

"Admit that on February 15, 1886, a petition was filed in the circuit court reciting that Albert Todd was dead, and that the then sheriff of St. Louis county refused to act as trustee in place of Albert Todd, deceased, the trustee under said deed of trust of John H. Terry and wife to said Albert Todd in trust for Edward and Mary Coles, dated July 20, 1876, and that in accordance with the prayer of said petition one William F. Broadhead was appointed by judgment of the said court as such trustee.

"Admit that on March 16, 1886, said Broadhead foreclosed said deed of trust at public sale, and sold the property therein described to said Elizabeth T. Terry for the sum of $3000; that said trustee's deed is recorded in the records of deeds of St. Louis county, Missouri, in book 30, at page 329.

"Admit that on March 30, 1887, said Elizabeth T. Todd and her husband by their warranty deed of that date sold and conveyed said property to one Joseph P. Schureman, who thereafter in 1893 conveyed the title so acquired by him to James McCausland, who thereafter conveyed the same property to the de-

fendant The Overland Real Estate Company, who thereafter platted said property as East Overland Park and sold and conveyed lots therein to defendants, and to each of them, or to the predecessors in title of each, by warranty deed.

"Admit that said Elizabeth T. Terry died on April 14, 1888, and that administration was had upon her estate and final settlement thereof filed and approved, and the administrator duly discharged, and the administration of said estate finally closed on or about July 15, 1890.

"And defendants deny each and every allegation contained in said second count of said amended petition, except such as are hereinbefore specifically admitted.

"And for further answer to said second count of said amended petition defendants state that on the 20th day of July, 1876, the said John H. Terry was the owner in fee and in possession by himself and his tenants of the real estate described in the first count of the amended petition; that on said last date the said John H. Terry and his wife made and executed a deed of trust whereby they conveyed said real estate in trust to said Albert Todd, to secure the payment of certain promissory notes; that said notes so intended to be secured by said deed of trust were made by the said John H. Terry and consisted of two principal notes of $3000 each, payable three years after date, with interest from maturity at ten per cent per annum, and twelve interest notes of $120 each, two of each of which were payable six, twelve, eighteen, twenty-four, thirty and thirty-six months after date; that said principal and interest notes were made payable to Edward and Mary Coles; that these defendants nor any one of them has or have in their possession or under their control the said deed of trust; that by mistake either in drafting said deed of trust or in making the record thereof, it appears by

the record thereof that one principal note of $3000 and six principal notes of $120 each were secured thereby, but said record of said deed of trust recites that there were fourteen notes in all secured thereby; that said deed of trust further provides that said John H. Terry, his grantees and lessees, should be and remain the tenants of the said Edward and Mary Coles, rendering and paying rent for all said real estate from the date of the execution of said deed of trust until the debt secured thereby was fully paid, or until said deed of trust was foreclosed by a sale thereunder in accordance with its terms.

"That on the 2nd day of November, 1883, the said John H. Terry and his said wife, by their warranty deed of that date, for a consideration in part of $5400, conveyed said real estate to the said Albert Todd, who took said real estate subject to the terms and conditions of said deed of trust; that said warranty deed recites that it is made subject to a certain deed of trust in favor of Mary and Edward Coles for the sum of $6000, recorded in book 548, at page 536, which said debt the said Todd undertook to pay as a part of the consideration of said conveyance.

"That on April 30, 1885, said Albert Todd died, leaving a last will and testament, which was thereafter probated in the probate court of the city of St. Louis, and letters testamentary thereon were by said court issued to said John H. Terry, who qualified and continued to act as executor of said will until the final settlement of said estate.

"That on February 15, 1886, a petition was filed in the circuit court of St. Louis county, Missouri, wherein is recited said deed of trust of John H. Terry and wife to said Edward and Mary Coles; that petitioner was the holder of a note of $3000 secured thereby; that said note was unpaid; that said Albert Todd, trustee, was dead; that by reason of the separation of the city and county of St. Louis by the scheme

and charter it was doubtful which sheriff, that of the city or of the county, should, as successor, execute said trust; that the sheriff of St. Louis county had refused to act; that the real estate affected by said deed of trust was situated in St. Louis county, and praying for the appointment of Wm. F. Broadhead as trustee; that said last-named court thereupon by its order and judgment appointed said Broadhead as trustee.

"That afterwards, on the 16th day of March, 1886, the said trustee executed the trust aforesaid by selling at public sale at the east front door of the courthouse in the city of St. Louis, said real estate, at which sale the said Elizabeth T. Terry became the purchaser at and for the sum of $3000, the receipt of which sum by said trustee is acknowledged in the deed of the said Broadhead to the said Elizabeth T. Terry, made in pursuance of said sale.

"That afterwards on March 30, 1887, the said Elizabeth T. Terry and her husband, the said John H. Terry, by their warranty deed of that date for a consideration of $7000, the receipt of which is acknowledged in said deed, conveyed said real estate to one Joseph R. Schureman, who thereupon took possession of said real estate under his said deed.

"That at the time said Schureman purchased said real estate and paid said sum of $7000 therefor, the said Schureman had no notice, either actual or constructive, of any right, title, interest or equity of plaintiffs herein touching said real estate, or of any breach of trust on the part of said John H. Terry and Elizabeth T. Terry, or either of them, touching plaintiff's interest therein; that at the time the defendant herein purchased and paid for and placed lasting and valuable improvements on the several and distinct parcels of said real estate, which each of them owns and is in possession of, separate and distinct from the other defendants, each defendant had no notice, either actual or constructive, of any right, title, interest or equity

of plaintiffs herein touching said real estate, or of any breach of trust on the part of said John H. Terry and Elizabeth T. Terry, or either of them, touching plaintiffs' interests therein.

"That the said Elizabeth T. Terry died April 14, 1888, leaving as her only heirs the plaintiffs herein; that said Elizabeth T. Terry died seized of a large and valuable estate; that plaintiffs, through inheritance from their said mother, Elizabeth T. Terry, have received said sum of $7000 paid by said Schureman to her for said real estate, and are thereby estopped from having or claiming any right, title or equity in said real estate.

"That each of the defendants on the parcel of said real estate owned and in possession of each of them, respectively, have made permanent and valuable improvements, thereby more than doubling the value thereof, and in consideration of all the allegations of this answer, and the lapse of time since said alleged breach of trust was committed by said John H. and Elizabeth T. Terry, the plaintiffs have been guilty of laches in not sooner prosecuting their claims, if any they have, herein, and they are thereby estopped from having or claiming any right, title or interest in said real estate.

"That the defendant the Overland Park Real Estate Company, under whom the other defendants hold title each to several distinct parcels of the real estate described in the first count of the amended petition as hereinafter more fully alleged, and its and the other defendants' grantors and predecessors in title of said real estate, have had and held open, notorious, actual, exclusive and adverse possession of said real estate, claiming title thereto, for a period of ten years and more before the commencement of this action."

Mr. O. P. Baldwin testified for defendants:

"I have lived just across the street from the land in suit since 1867, and am acquainted with said land.

I have known John H. Terry, Sr., since about that time. When Aiken owned the land it was in the possession of a man named Rodeman. After Aiken sold to Terry, it was in the possession of Mr. Terry's tenant, Joseph P. Connelly, who was farming it. There was then a four-room house on the land, a stable, and some small outhouses. It was all in cultivation except about one acre on the northeast corner.

"Joseph P. Schureman succeeded Connelly in possession. I made the sale for Mr. Terry to Mr. Schureman. Schureman paid $7000, which was a reasonable value at that time.

"After Mr. Schureman bought the property he farmed it, rented it out. He had a tenant named Whitely, and he farmed with the tenant. He put a large barn on the property, and fenced the whole property with a good wire fence and cedar posts. He planted about forty acres in orchard. He continued in possession until I resold it again to a man by the name of McCausland.

"I know that none of these Terry children knew anything about the title to this property, or their interest in it, until I myself informed them. And I informed them right before this suit was brought."

The witness further stated that the average cost of houses built on the lots is from $2500 to $3500, and that unimproved lots sold from $500 to $900 for a half acre.

For plaintiffs John H. Terry, Sr., testified: "Albert Todd's estate was in course of administration about three years. I was the sole executor of that estate. Broadhead and Haeussler were my attorneys. Haeussler did most of the work. I remember the circumstances of the sale under the deed of trust of this property which is involved in this suit. Mr. Haeussler managed the sale. I was not present, but he attended the sale and reported it to me. Mrs. Terry, my wife, was not present at that time. She was an invalid for

a long time. I asked Mr. Haeussler to have the fore-closure sale made. At the time of that foreclosure sale I know that there was nothing paid, either to my-self or to Mrs. Terry. I know that no money was ever paid by Mr. Schureman to Mrs. Terry.''

Cross-Examination: ''Mr. Schureman did not pay any money to me. I know that he did not pay any money to Mrs. Terry. I know that he paid that $7000, or whatever was paid, to Haeussler, and it was applied immediately upon the deed of trust. It did not come into my hands at all. It was applied on the $6000 that Todd owed, and the costs.''

Redirect Examination: ''That matter was left to Mr. Haeussler, and he did what he did in my absence. I was not present when he received any money. I do not know of my own knowledge what Haeussler did with this particular money that he got.''

John H. Terry, Jr., one of the plaintiffs, testi-fied: ''The plaintiffs were born on the following dates: Albert T. Terry on December 19, 1869; Robert J. Terry, on December 24, 1871; John H. Terry, Jr., on November 24, 1873; Howard L. Terry, on January 24, 1877.''

The petition filed by Haeussler in the circuit court for the appointment of Mr. Broadhead as trustee stated that Haeussler was the holder of the $3000 note payable to Coles secured by that deed of trust. The trustee's deed to Mrs. Terry recites a consideration of $3000.

I.   The petition alleges that Albert Todd assumed and agreed to pay the $6000 deed of trust to the Coles. By such agreement he became the principal Assuming. debtor as to that $6000 encumbrance on the Mortgage. land. [Orrick v. Durham, 79 Mo. l. c. 180; Fitzgerald v. Barker, 70 Mo. 685.]

It is needless for us to inquire whether the law would require that the debt to Coles should be paid out of the personalty of Todd's estate and the land be thus relieved of that encumbrance. The petition alleges that the estate had $80,000 of personalty after the payment of debts and the expenses of administration. The answer denies that allegation, not specifically, it is true, but under the general denial. There is no evidence in the case showing whether there was any personalty in the estate.

We thus have a plain case of a devise of encumbered realty, by which Mrs. Terry took a third of the land for life with remainder to her children, these plaintiffs. She took another third in the land because her father appears to have died intestate as to that third. The remaining third under the will went to these plaintiffs in fee, subject to the control of their parents during their respective minorities. Under such circumstances, when Mrs. Terry became the purchaser at the foreclosure sale, she took the title thus acquired for the benefit of herself and of the plaintiffs according to their respective interests. Plaintiffs say that she paid nothing at that sale for the land, that such sale was merely colorable and without consideration and did not for that reason pass even the legal title. They say in their petition that the Coles debt was paid out of the personal assets of the Todd estate. That allegation is denied by the answer and is refuted by the following facts: The trustee's deed to Mrs. Terry shows the payment by her of the $3000 bid at the sale. Mr. Haeussler, who was the attorney of the executor of Todd's estate, in his petition for the appointment of a trustee to make the sale, states that he was the holder of the $3000 note secured by that deed of trust.

Foreclosure: Purchase by Trustee.

John H. Terry, Sr., in his testimony for plaintiffs states that the $7000 paid by Schureman to the Terrys

for the land was paid to Haeussler and applied by him to the payment of the deed of trust. True Mr. Terry, on redirect examination, denied knowledge as to what was done with the particular money. *The Terrys did not get any of the money paid by Schureman for the land, and the Coles debt was paid.* According to the evidence Schureman paid all the land was worth, and, according to the evidence of John H. Terry it took all of the $7000 paid by Schureman for the land to pay the Coles debt. He says, "It was applied on the $6000 that Todd owed and the costs." The petition speaks of unpaid interest on that debt. So that there was a mere bare equity left in the children. They had the right, in a reasonable time, to contribute their share of the amount paid by Mrs. Terry for the land and have the title vested in them *pro rata* according to the respective interests of the parties. Whether they were bound to pay their proportion of the $3000 consideration named in the trustee's deed to Mrs. Terry, or their proportion of the $7000 paid by Schureman, we will not, under the circumstances of this case, undertake to decide. They were at least bound to contribute their proportion of the $3000.

Appellants say that defendants are affected with notice of the infirmities in Mrs. Terry's title, because **Notice.** she held under the will and under the trustee's deed, and that persons claiming under her must take notice of the instruments in both sources of her title. That is conceded. On the other hand the plaintiffs are required to take notice of both those sources of title.

Baldwin, a witness for defendants, testified: "I know that none of these Terry children knew anything about the title to this property, or their interest in it, until I myself informed them. And I informed them right before this suit was brought."

Then they did not actually know until just before this litigation was begun that they ever had any

interest in this land. Let it be conceded that they did
not, up to that time, have actual knowledge that any
interest in the land had ever been devised to them.
When they, even at that late day, begun to assert their
rights under Todd's will, they did so *cum onere*. The
law conclusively presumes that from the filing of
Todd's will plaintiffs had knowledge of its contents,
and also that they had knowledge of the deed of trust
to the Coles and of the assumption of that debt by
Todd, because those facts were all in Todd's chain of
title. The deed of trust to the Coles contained a
power of sale. Plaintiffs, in contemplation of law,
knew that a sale was liable to be made under that
power, and that the purchaser at such sale was liable
to sell the land, or improve it or subdivide it.

In Farrar v. Payne, 73 Ill. 82, it was said. "Sharp
had but an equity of redemption. At the time Cald-
well, the attaching creditor, levied his writ of attach-
ment, the sale under the trust deed had already been
made and the equity of redemption extinguished.
There was no duty resting upon either Cranston or
Gibbons to give notice of the purchase and sale to
Sharp or those claiming the equity of redemption un-
der him, either by the recording of the trustee's deed
from Gibbons or otherwise. The trust deed had been
recorded previous to the attachment, and that was
enough. The published notice of the sale was all the
required notice of any proceeding under the trust
deed. The recording of the trust deed gave notice
of its existence to subsequent claimants of the equity
of redemption, and pointed out the source of informa-
tion of what might be done in pursuance of the deed,
and they were bound to take notice of the proceedings
thereunder. The title of Cranston related back to the
execution of the deed of trust. The subsequent pro-
ceedings under the deed of trust were connected with
and in aid of the title conveyed by that deed."

In Marshall v. Hill, 246 Mo. l. c. 30, BROWN, C., said: "The Lead Company had constructive notice of all matters of public record in its own chain of title, including such collateral matters as these records pointed out. In this case the chain of title consists solely of the patent of 1898 and their own option. It is true the patent points out that it is made 'in lieu of one dated August 30, 1872, in which the description of the land was erroneous, the record of which has been cancelled.' This notation does not tend to direct attention to the fact that any chain adverse to the patentee existed. Nor do we think that a purchaser from the patentee or those claiming under him, who has had no connection with the proceedings by which the patent was obtained, is, by his purchase alone ·chargable with notice of such proceedings."

Thus plaintiffs were required to take notice of the foreclosure of the Coles deed of trust and of their mother's purchase and of her sale to **Laches.** Schureman and on down the title to the filing of the plat of East Overland Park. They were affected with constructie notice that numerous persons were liable to purchase lots in that plat and build improvements thereon. Yet no suit was brought until four years after such plat was filed and until after many residences had been built on the lots. The owner of land may be far away, and he may be in fact ignorant of the title which he holds to real estate, but there are two things which the law presumes that he knows: First, the facts in his chain of title, and such additional facts as he is bound to learn by following down a superior chain of title; second, he must take notice of buildings and other improvements made on the land that are so open and notorious that in passing by or over the land the plaintiffs could not reasonably be deceived. [Lumber Co. v. McCabe, 220 Mo. l. c. 182.]

We are not doubtful when we say that the plaintiffs have not proceeded within a reasonable time to have their rights declared in this property. They are barred by laches. They waited for more than twenty years after the sale to their mother, and eight years after the youngest of them became of age, before bringing suit.

The defendants have the legal title. Plaintiffs cannot recover without the aid of equity, and laches bars the way to equitable relief. They have waited until the farm has become urban property, greatly enchanced in value in two ways, by the general rise in value of property, and by the improvements which have been put upon it by the defendants and those under whom they claim.

In Shelton v. Horrell, 232 Mo. l. c. 376, Judge GRAVES said, "Under evidence which shows that the land had materially advanced in value, and to some extent through the efforts of the defendants, it will hardly do to say that there has not been a changed situation which was occasioned by the laches of the plaintiff."

II. Appellants say that the judgment should be reversed and remanded as to defendants Dimitry, Mitchell and Morris for the reason that these defendants on the witness stand declared that they had never employed any attorney to represent them in this case. All the defendants, including those three, were joined in an answer signed by counsel. That answer was never withdrawn or stricken out by the court. It stood as an answer until disposed of by the court in some way known to the law. The case was tried on the theory that the allegations of the petition were denied, and we must consider it in that light. The decree of the trial court is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.