NORTHRIDGE BANK, Plaintiff-Appellee, *v.* LAKESHORE COMMERCIAL FINANCE CORPORATION, Defendant-Appellant.—(SCHROEDER, GELDEN, RIESTER & MOERKE, Defendant.)

First District (2nd Division)   No. 76-651

Opinion filed April 5, 1977.

Elliot F. Smith, of Chicago, for appellant.

Carey, Filter & White, of Chicago (Edward M. White, of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This appeal concerns the priority of mortgage liens. The defendant, Lakeshore Commercial Finance Corporation (Lakeshore), is appealing from an order of the circuit court of Cook County granting priority to the mortgage held by the plaintiff, Northridge Bank (Northridge), on certain real estate located in Cook County, Illinois over that held by Lakeshore and ordering that the proceeds of an escrow fund held by defendant Schroeder *et al.* be paid over to Northridge. The trial court stayed the latter portion of its order pending the outcome of this appeal.

On September 16, 1974, Howard Bloom executed a mortgage deed in favor of Lakeshore. The mortgage identifies Bloom as the mortgagor and Lakeshore as the mortgagee, states that the mortgage is to secure the principal sum of $30,000, sets forth the legal description of the real estate, and then, amongst other language, states:

> "This mortgage is given to secure the following note, or other obligation or obligations, hereinafter called the Debt Instrument: *To secure all obligations of Mortgagor to Mortgagee.* * * *
> * * *
> COVENANTS OF MORTGAGOR: The Mortgagor covenants and agrees as follows:
> * * *
> 2. The Mortgaged property shall stand as security for the Debt Instrument and for the performance by the Mortgagor of its covenants and agreements therein, and the lien of this mortgage, subject only to the exceptions noted above, shall be a valid and continuing lien upon all of the Mortgaged Property to secure the prompt payment of the Debt Instrument and the performance of each and every obligation therein, provided The Mortgaged Property *shall also be security for any additional and subsequent advances by the Mortgagee to the Mortgagor, and all other obligations due from, or guaranteed by, the Mortgagor to the Mortgagee, at any time prior to the satisfaction of this mortgage.*"
> (Emphasis supplied.)

The next following language, included on the printed form, has been crossed out on the mortgage held by Lakeshore:

"It is provided, however, that the total indebtedness outstanding at any one time and secured hereby shall in no event exceed _____ DOLLARS."

On October 4, 1974, Bloom executed another mortgage on the same described real estate in favor of Northridge. The relevant portions of that document read as follows:

"THE MORTGAGOR, Howard Bloom, * * *, Mortgages and Warrants to Northridge Bank, * * *, to secure the payment of a certain promissory note, executed by said mortgagor bearing even date herewith, payable to the order of said mortgagee the following described real estate [the legal description of the real estate follows] situated in the County of Cook, in the State of Illinois."

It is to be noted that nowhere on the face of the Northridge mortgage document is there a statement or description of the amount of indebtedness it secures.

Northridge recorded its mortgage at 9:28 a.m. on October 25, 1974. On that same date, at 3:07 p.m., the prior mortgage executed in favor of Lakeshore was recorded.

Subsequently, it became apparent to all of the parties concerned that the value of the real estate was insufficient to fully satisfy both of the encumbrances. A buyer having been found, Lakeshore and Northridge entered into an escrow agreement with defendant Schroeder *et al.*, as escrow agent on April 4, 1975. By the terms of this agreement, the parties agreed that the land would be sold and both parties would deliver to the escrow agent satisfactions of their respective mortgages. The escrow agent would deliver them to the buyer of the land at the time of closing. In consideration for the satisfactions, the proceeds of the sale would be given to the escrow agent pending the outcome of a declaratory judgment action to be commenced by Northridge.

The sale was completed according to the terms of the agreement. Northridge then commenced this action for a declaratory judgment, alleging the superiority of its right to the escrow fund over the claim of Lakeshore. Lakeshore's answer admitted the material allegations of the complaint and raised as an affirmative defense that because the Northridge mortgage failed to state the amount of the debt it secured, nor facts by which the amount of the debt could be ascertained, it was insufficient in law to impart constructive notice of Northridge's interest and was therefore unenforceable as against Lakeshore. Northridge replied to the affirmative defense, asserting that the Lakeshore mortgage suffered the same defect, "contrary to the requirements of chapter 30, § 10 (Ill. Rev. Stat. 1975)."

Both parties then moved for judgment on the pleadings. The trial court

granted Northridge's motion for judgment on the pleadings, denied the motion of Lakeshore, declared that the interest of Northridge in the escrow fund is superior to that of Lakeshore, and ordered the fund be turned over to Northridge, permitting the escrow agent to retain the fund pending the outcome of this appeal.

## I.

The sole issue to be determined in this appeal is which of these parties has a superior interest in the escrow fund. Lakeshore argues that the mortgage executed by Bloom in favor of Northridge, while recorded prior to the recording of its mortgage, is insufficient as a matter of law to impart constructive notice of the lien claimed to creditors and subsequent purchasers because it fails to state the amount of the indebtedness it purports to secure or enough information for further inquiry as required in section 11 of "An Act concerning conveyances" (Ill. Rev. Stat. 1975, ch. 30, par. 10.)[1] Lakeshore contends that it is a "subsequent purchaser without notice" within the meaning of section 30 of "An Act concerning conveyances" (Ill. Rev. Stat. 1975, ch. 30, par. 29), and that because it had neither actual nor constructive notice of the Northridge lien at the time its mortgage was recorded, it is entitled to the escrow fund.

■■ ■ Northridge, conceding that its mortgage is insufficient as a matter of law to impart constructive notice, affirmatively argues that Lakeshore's mortgage suffers the same defect. The factual basis for this argument is that while Lakeshore's mortgage initially states that it secures an indebtedness of $30,000, other language on the printed form states that the mortgage was given to secure:

> "* * * all obligations of the Mortgagor to the Mortgagee * * *, any additional and subsequent advances by the Mortgagee to the Mortgagor, and all other obligations due from, or guaranteed by, the Mortgagor to the Mortgagee, at any time prior to the satisfaction of this mortgage."

Northridge's claim to the escrow fund is based upon (a) the doctrine of

---

[1] Section 11, in pertinent part, reads:

"Mortgages of lands may be in the following form, substantially: .

The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (here insert description thereof), situated in the county of _____, in the state of Illinois.

Dated this _____ day of _____, A.D., 19 _____
· A.B.

Every such mortgage, when otherwise properly executed, shall be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified; * * *."

equitable mortgages, [2] through which the intent of the parties to create a mortgage is given effect where a mortgage instrument is otherwise legally defective, and (b) the equitable maxim, "first in time is first in right." (See 2 Pomeroy's Equity Jurisprudence §413 *et seq.* (5th ed. 1941).) Northridge argues that as between two recorded equitable mortgages, the mortgage recorded first in time should receive priority.

In reply to this argument, Lakeshore, urging the complete validity of its mortgage, argues that even if Northridge is correct, the equitable maxim should be applied to give effect to Lakeshore's mortgage, as its interest was created prior in time.

Both of the documents in issue fail to state the amount of the indebtedness secured. In *Bullock v. Battenhousen* (1883), 108 Ill. 28, our supreme court held that a trust deed which failed to state the amount of indebtedness secured was insufficient under the recording laws to impart constructive notice, and said, at page 37:

> "The policy, though not the letter, of our statutes requires, in all cases, a statement upon the record of the amount secured. Thus, in section 11, chapter 30, Rev. Stat. 1874, page 274 [now Ill. Rev. Stat. 1975, ch. 30, par. 10], the form of mortgage there given requires the mortgage to 'recite the nature and amount of indebtedness.' * * * A statement upon the record of the amount claimed to be due informs all what lien is claimed. They know what they must contest, or subject to what they must take, in subsequently dealing with the property. It prevents secret conspiracies between mortgagors and mortgagees as to the fact and amount of indebtedness to the prejudice of subsequent purchasers and creditors, by compelling them to at once make known the real claim. In some instances, subsequent dealers with mortgaged property could not have information from the holders of indebtedness secured by mortgage, because they could not be found, —as in the case of negotiable securities running for a long time, and negotiated many times before maturity; and it might often be, as in the instance before us, perilous to rely on the word of the mortgagor."

The court in *Battenhousen* also quoted the following language from *Metropolitan Bank v. Godfrey* (1860), 23 Ill. 531, 552-53:

---

[2] The doctrine of equitable mortgages was discussed in *Trustees of Zion Methodist Church v. Smith* (4th Dist. 1948), 335 Ill. App. 233, 236-37, where the court stated:
"The doctrine of equitable mortgages is based upon the principle that equity will interpret an agreement according to the intent of the parties as evinced therein, and if not contrary to some positive rule of law or public policy, will give it effect even though it does not meet the technical requirements of the law; hence where an instrument manifests an intent to charge or pledge property as security for a debt, and the property is identified, a lien will be recognized in equity."

"The spirit of our recording system requires that the record of a mortgage should disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance.

If a mortgage is given to secure an ascertained debt, the amount of that debt should be stated; and if it is intended to secure a debt not ascertained, such data should be given respecting it, as will put any one, interested in the inquiry, upon the track leading to a discovery. If it is given to secure an existing, or a future liability, the foundation of such liability should be set forth. *North v. Belden*, 13 Conn. 376; *Hart v. Chalker et al.*, 14 id. 77."

In *Flexter v. Woomer* (5th Dist. 1964), 46 Ill. App. 2d 456, 197 N.E.2d 161, the Fifth District, citing *Battenhousen*, held that a mortgage which failed to state either the amount of indebtedness or maturity date was insufficient as constructive notice, and granted priority to a subsequently recorded mortgage.

■■ Lakeshore argues that its mortgage states on its face the amount of the indebtedness, citing *Dunn v. Burke* (1st Dist. 1907), 139 Ill. App. 12, *Metropolitan Life Insurance Co. v. Kobbeman* (2d Dist. 1931), 260 Ill. App. 508, *Farrar v. Payne* (1874), 73 Ill. 82, and *Babcock v. Lisk* (1870), 57 Ill. 327. However, we find nothing in those cases to support Lakeshore's position under the facts of this case. Here, the Lakeshore document initially states that it secures a debt of $30,000. Other language in the form used describes the debt in much broader terms. The language allows Lakeshore to make an unlimited amount of future advances under the same instrument, and language which would set a ceiling on the amount of any future advances has been deleted. Thus, the mortgage executed in favor of Lakeshore not only fails to state the amount of the present indebtedness, it also is completely open-ended as to future indebtedness. It is impossible, from a reading of the Lakeshore mortgage, to ascertain the amount of indebtedness secured thereby.

While we agree with Northridge's assertion that both of the documents are legally insufficient to impart constructive notice of the amounts of their respective liens, we do not believe it is necessary to resort to the doctrine of equitable mortgages to resolve this case. Our recording statute (Ill. Rev. Stat. 1973, ch. 30, par. 29) provides ample authority for our conclusion that Northridge has a superior interest in the escrow fund.

Section 30 of "An Act concerning conveyances" (Ill. Rev. Stat. 1973, ch. 30, par. 29) provides:

"All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void

as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record."

Applying this statute to the facts of this case, at the time Northridge filed its mortgage in the county recorder's office, it had no constructive notice of the Lakeshore mortgage.[3] Therefore, if the mortgage had stated the amount of the indebtedness it secured, it would be entitled to priority over any instrument subsequently recorded outside of the chain of title. However, as we have concluded that the Northridge mortgage failed to impart constructive notice of the lien claimed, it was subject to being subordinated to a subsequent mortgage recorded by a "subsequent purchaser" without actual notice.

Lakeshore strongly urges that it is a "subsequent purchaser" within the meaning of the statute. Most of the discussion, however, misses the point and deals with the issue of the precise moment in time when a person may be said to have constructive notice, and not whether that party is a "subsequent purchaser." *Doyle v. Teas* (1843), 5 Ill. 202, cited by Lakeshore, dealt with the claim of one Munson that at the time he received his deed to the disputed land from Doyle, he had no actual or constructive notice of a prior contract of sale executed by Doyle in favor of Teas. Under the recording act, Munson argued, even though Teas' contract of sale was recorded prior to Munson's deed, Munson should have priority because of his lack of notice at the time he "subsequently" purchased from Doyle. The supreme court held that Teas had priority because Munson had a duty to examine the record at the time he recorded his deed and could not rely on the state of the record at the time of purchase. Thus, even though Munson was a subsequent purchaser, at the time he recorded he had constructive notice of the claimed interest in Teas, because Teas had recorded first. At that point, it made no difference who had purchased first from Doyle because Munson had notice. The other cases cited by Lakeshore in its brief are all cases in which the issue was solely constructive notice and not, as here, whether the "subsequent recorder" was also a "subsequent purchaser." If anything, the discussion in Lakeshore's brief which defines "subsequent purchaser" strongly supports Northridge's claim of priority. As an illustration, Lakeshore's brief states, at page 10: "In order to effectuate a system upon which a purchaser can rely, the recording act provided for a system that results in protecting a creditor or subsequent purchaser, without notice, who duly records a deed, mortgage, or other instrument authorized to be recorded and penalizing a party who does not duly record his instrument so authorized." This statement clearly supports the Northridge position and provides little support for Lakeshore.

---

[3] Neither of the parties to this cause has argued any actual notice on the part of the other. We therefore assume that there was no actual notice.

Bloom's mortgage in favor of Lakeshore was executed on September 16, 1974, but was not recorded until 3:07 p.m. on October 25, 1974. In the interim, another mortgage was executed by Bloom in favor of Northridge on October 4, 1974, which was recorded at 9:28 a.m. on October 25. Thus, Lakeshore is a "prior purchaser" who failed to duly record its instrument, while Northridge, the "subsequent" purchaser was completely without constructive notice due entirely to Lakeshore's failure to promptly record. In addition, Northridge duly recorded its mortgage. Had Lakeshore promptly recorded even its defective mortgage, this dispute may never have arisen, for although Northridge would still have been without constructive notice, there is no way of knowing whether the presence of the Lakeshore mortgage on the record would have caused Northridge to exercise caution in extending credit to Bloom.

Our decision here is in accord with the Illinois Supreme Court's 1853 decision in *Kennedy v. Northup* (1853), 15 Ill. 148, where an interest in land was created, but not recorded until 32 years later. In the interim, another interest in the same land was created and duly recorded. The case turned upon the court's construction of the term "subsequent purchaser." The court held for the party whose interest in the land was created later in time, but recorded first in time, stating:

> "By the fault of some one the land had been twice sold, from which some one must suffer; and is it not right, is it not in harmony with every principle of law, that he who is in fault, in not notifying the world by recording his deed, shall suffer the loss which has resulted from such negligence?" (15 Ill. 148, 157.)

Accordingly, the decision of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.