(Nos. 62513, 62575 cons.—

METROPOLITAN LIFE INSURANCE COMPANY *et al.*, Appellees, v. JOHN WASHBURN, Director of Insurance, *et al.*, Appellants.—THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *et al.*, Appellees, v. JOHN WASHBURN, Director of Insurance, *et al.*, Appellants.

Opinion filed May 21, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Robert E. Wagner, Assistant Attorney General, of counsel), for appellants.

Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield (Patrick V. Reilly and William S. Hanley, of counsel), for appellees.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs, 14 foreign insurance companies licensed to do business in Illinois, made payments of privilege taxes under protest and then, in three separate but similar actions filed in the circuit court of Sangamon County, challenged the constitutionality of the tax. Named as defendants were the Director of the Department of Insurance, John Washburn, and the State Treasurer, James Donnewald. Relying on section 444.1(4) of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1056.1(4)), the defendants contended, however, that portions of the protested payments could be released from the protest fund into the State's general revenue fund; the sums sought to be transferred represented retaliatory taxes that could become due if the privilege tax

provision were found to be invalid. The plaintiffs protested their liability for any sums under the alternative retaliatory provisions as well. The circuit court refused to allow the suggested transfers and entered preliminary injunctions requiring the defendants to maintain the entire protested privilege tax payments, and any further payments properly made under protest, in the protest fund. The defendants took interlocutory appeals from those orders, and we allowed their motions for a direct appeal to this court (103 Ill. 2d R. 302(b)). Two of the actions had been consolidated in the circuit court, and they were consolidated in this court with the third action. The only issue presented by these interlocutory appeals concerns the scope and operation of section 444.1(4), which the defendants construe as requiring the release from the protest fund of that portion of the privilege tax payment equivalent to the alternative retaliatory tax.

The procedural history of these cases may be reviewed briefly. The same counsel represented the plaintiffs in all three actions, and essentially the same course was followed in each. Cause No. 62513 is itself the consolidation of two actions. The first was brought on March 29, 1985, by Metropolitan Life Insurance Company, Metropolitan Insurance and Annuity Company, and Metropolitan Tower Life Insurance Company; the second action was brought on July 12, 1985, by New York Life Insurance Company, Northwestern Mutual Life Insurance Company, Mutual Life Insurance Company of New York, and New York Insurance and Annuity Corporation. Each plaintiff alleged that it had made a payment of privilege taxes under protest and challenged the constitutionality of the privilege tax provision. On the defendants' motion, the plaintiffs were ordered to comply with section 444.1(4) by submitting statements of the alternative retaliatory tax, and they did so, filing supplemental

retaliatory tax returns on forms supplied by the Department of Insurance. In each instance the taxpayer computed the amount of retaliatory tax that would be due for the appropriate period if the privilege tax protest succeeded but asserted that the alternative retaliatory tax was being protested and opposed the release of any of those sums into the general revenue fund, as provided by section 444.1. The plaintiffs also alleged in their complaints that the retaliatory tax was unconstitutional and therefore contested their liability for any amounts under the alternative retaliatory provision. On September 27, 1985, the circuit court entered an order finding that section 444.1(4) violated due process by requiring the transfer of protested funds to the general revenue fund, and the court directed the defendants to maintain the protested payments in the protest fund.

In cause No. 62575, seven insurance companies—the Equitable Life Assurance Society of the United States, Massachusetts Mutual Life Insurance Company, Massachusetts General Life Insurance Company, Wabash Life Insurance Company, Bankers Union Life Insurance Company, Modern American Insurance Company, and Union Bankers Insurance Company—filed a complaint on October 15, 1985, alleging their payment under protest of estimated privilege tax payments. They alleged too that any amounts attributable to the alternative retaliatory tax were also being protested. Like the plaintiffs in the two other actions, the plaintiffs in this action challenged both the privilege tax provision and the provision for the alternative retaliatory tax. The circuit court entered a preliminary injunction directing the defendants to maintain all protested payments in the protest fund. As in the other actions, the court found that the provision at issue here, section 444.1(4), violated due process.

The statutory provisions relevant here may be described briefly. Under section 409(1) of the Illinois Insur-

ance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1021(1)), a 2% tax is imposed on the net taxable premium income of foreign or alien insurance companies for the privilege of doing business in this State. Excepted from the privilege tax are domestic companies satisfying certain criteria regarding the nature and extent of their operations in this State, and it was that preference for domestic companies that prompted the protests here (see *Metropolitan Life Insurance Co. v. Ward* (1985), 470 U.S. 869, 84 L. Ed. 2d 751, 105 S. Ct. 1676). Also relevant is the retaliatory tax provided by section 444 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 1056). The purpose of the retaliatory tax is to encourage uniform taxation of insurance companies (see *Western & Southern Life Insurance Co. v. State Board of Equalization* (1981), 451 U.S. 648, 668-69, 68 L. Ed. 2d 514, 531, 101 S. Ct. 2070, 2083; *Trinity Universal Insurance Co. v. O'Connor* (1983), 113 Ill. App. 3d 560, 563-64; *Minnesota Mutual Life Insurance Co. v. O'Connor* (1981), 98 Ill. App. 3d 1040, 1042-43), and, in general terms, it is applied whenever Illinois insurance companies doing business in the foreign taxpayer's home State would be taxed at a greater rate than foreign companies are taxed by this State. The retaliatory provision in effect borrows the tax provisions of the foreign company's home State, and the company is then taxed in Illinois at that higher rate.

Section 444.1(4), at issue here, comes into play only if a company makes a payment of its Illinois privilege tax under protest. The effect of the provision is to separate from the protested privilege tax payment an amount equivalent to an alternative or contingent retaliatory tax, to be calculated as though the taxpayer's protest of the privilege tax were successful. Section 444.1(4) provides:

"Any foreign or alien taxpayer who makes, under protest, a tax payment required by Section 409 shall, at the time of payment, file a retaliatory tax return sufficient to disclose the full amount of retaliatory taxes which would be due and owing for the tax period in question if the protest were upheld. Notwithstanding the provisions of 'An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois by virtue of their office or employment', approved June 9, 1911, [*i.e.*, the State Officers and Employees Money Disposition Act (Protest Act)] as now or hereafter amended, or any other laws of this State, the protested payment, to the extent of the retaliatory tax so disclosed, shall be deposited directly in the General Revenue Fund; and the balance of the payment, if any, shall be deposited in a protest account pursuant to the provisions of the aforesaid Act, as now or hereafter amended." (Ill. Rev. Stat. 1985, ch. 73, par. 1056.1(4).)

The statute referred to there is the State Officers and Employees Money Disposition Act (Ill. Rev. Stat. 1985, ch. 127, pars. 170 through 176a.1) (Protest Act), which provides procedures for making payments to the State under protest. Under that provision, the protested payment is sequestered in a protest fund pending resolution of the dispute (see Ill. Rev. Stat. 1985, ch. 127, par. 172).

The privilege tax will be eliminated if the plaintiffs succeed in their protests of it, and therefore, under section 444.1(4), the amount of alternative retaliatory tax must be calculated as though the Illinois privilege tax is zero. The dispute here is whether the amount disclosed by that calculation must be released into the general revenue fund in every case, as the defendants contend, or whether it should remain in the protest fund if it is subject to a protest also, as the plaintiffs contend. The defendants believe that their interpretation is dictated by the statement in section 444.1(4) requiring the release of

the alternative retaliatory tax notwithstanding the Protest Act. The defendants suggest that recourse may be had to the Court of Claims if the protest of the alternative retaliatory tax also eventually succeeds.

The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40.) To construe section 444.1(4) in the broad manner urged here by the defendants would, we believe, extend it beyond its intended scope. The purpose of that provision is to allow the release to the general revenue fund of an amount of money that the taxpayer is certain to owe, even if the protest of the privilege tax succeeds. To that end, the statute provides for the release of that sum notwithstanding the Protest Act, which would otherwise require that the entire payment remain sequestered in the protest fund. Section 444.1(4) does not address the further problem presented here, a challenge to the alternative retaliatory tax; the statute speaks only of protests of privilege tax payments, and we do not believe that its scope extends to the alternative retaliatory tax, when the taxpayer protests that as well. We conclude that section 444.1(4) does not require the release into the general revenue fund of alternative retaliatory taxes that the taxpayer indicates are being protested.

The defendants would find support for their interpretation of section 444.1(4), however, in the legislative history of the provision. They believe that the legislature intended to codify a decision that had been reached in a similar case in the circuit court of Cook County shortly before the provision in question here was enacted. In that other case, which eventually was dismissed voluntarily, a modified preliminary injunction was entered on January 8, 1982, requiring the plaintiff insurance companies to compute alternative retaliatory taxes and al-

lowing the release of those sums into the general revenue fund.

Section 444.1(4) was enacted as a part of Public Act 82—767, which contained several other provisions regarding the taxation of insurance companies. In explaining certain aspects of the bill, its sponsor, Representative Sandquist, referred to the other action, saying:

"The second part of the Bill provides for a separation of the privilege tax [from] the retaliatory tax. And the reason for that is, there is a suit pending right now *** in which the out-of-state insurance companies are challenging the privilege tax ***. And, if they should be successful, then the State would lose the retaliatory tax." (House Debates, 82d Ill. Gen. Assem., May 13, 1982, at 143.)

On second reading of the bill in the Senate, the sponsor, Senator Schuneman, explained, "This bill provides penalties against insurance companies for late payment or nonpayment of retaliatory taxes. The amendment that was adopted in committee simply changes the procedures for the payment of those taxes and imposes penalties on insurance companies for untimely *** filing of tax returns." (Senate Debates, 82d Ill. Gen. Assem., June 15, 1982, at 32-33.) Later, on third reading, the sponsor said, "This is a Department of Insurance bill which would establish procedures for the payment of retaliatory taxes by foreign insurance companies. The bill imposes penalties upon any insurance company which fails to file timely tax returns or pay the taxes as required by the code. It also changes the penalty for the late payment of taxes from the present penalty which is one percent to the rate established under the Internal Revenue Code." (Senate Debates, 82d Ill. Gen. Assem., June 23, 1982, at 82-83.) Finally, in discussing the effect of a Senate amendment to the provision in question, the sponsor of the legislation in the House explained that the

change "makes it clear that *** if a suit is filed by an insurance company *** challenging the privilege tax, *** that part which goes for the retaliatory taxes will be paid in to the General Revenue Fund; and that the protested privilege tax only will be paid into a protest fund." House Debates, 82d Ill. Gen. Assem., June 24, 1982, at 54 (statement of Representative Sandquist).

Although reference was made to the Cook County action, the legislature did not consider the problem presented here. We note, therefore, that our interpretation of the provision here is consistent with the statements appearing in the legislative history.

Having concluded that section 444.1(4) does not require the release into the general revenue fund of alternative retaliatory taxes that the taxpayer indicates are being protested, we affirm those parts of the circuit court's orders directing the defendants to maintain those sums in the protest fund. Given this result, the constitutionality of the provision does not come into question, and accordingly the circuit court's findings that the statute is unconstitutional are vacated. The causes are remanded for further proceedings.

*Affirmed in part and vacated in part; causes remanded.*