PNC BANK, NATIONAL ASSOCIATION, Successor in Interest via Merger to National City Bank of the Midwest, Plaintiff,

v.

Michael A. NORDWALL and Michael A. Nordwall, Ltd., Defendants,

and

Charles E. Covey, Trustee, Intervenor.

No. 11–cv–1451.

United States District Court, C.D. Illinois.

July 22, 2013.

its work done on the claim against Becker before this case was converted to Chapter 7.

Francis J. Pendergast, III, John F. Sullivan, Matthew L. Hendricksen, Crowley & Lamb PC, Chicago, IL, for Plaintiff.

Jeffrey D. Richardson, Decatur, IL, for Trustee.

## ORDER & OPINION

JOE BILLY McDADE, Senior District Judge.

This matter is before the Court on multiple motions filed by Plaintiff: Motion for Summary Judgment (Doc. 44), Amended Motion for Default Judgment (Doc. 52),[1] Motion for Judgment of Foreclosure (Doc. 45), Motion to Appoint Special Commissioner (Doc. 46), and Motion for Attorney Fees (Doc. 48). For the following reasons, all of Plaintiff's Motions are granted.

**1.** Also pending is a Motion for Default Judgment (Doc. 43), which the Amended Motion is intended to replace. Thus, the original Mo-

### PROCEDURAL HISTORY

Plaintiff filed its Complaint against Defendants Michael A. Nordwall and Michael A. Nordwall, Ltd., on December 14, 2011. (Doc. 1). In it, Plaintiff alleged that the mortgage on Defendant Michael A. Nordwall's property, which matured on February 7, 2011, was in default, with a total outstanding balance of $404,611.66 as of October 20, 2011, and interest accruing at the rate of $64.07 per day. (Doc. 1). Neither defendant has answered or otherwise appeared. Plaintiff initially sought default judgment and judgment of foreclosure on June 22, 2012. (Docs. 11, 12). Subsequently, Defendant Michael Nordwall's bankruptcy trustee, Charles E. Covey, was allowed to intervene in this case on August 22, 2012. (Text Order, Aug. 22, 2012). Intervenor filed an answer on September 6, 2012, and a counterclaim on January 1, 2013, claiming a right to set aside the mortgage. (Docs. 23, 39). Pursuant to Magistrate Judge Cudmore's Report and Recommendation, adopted by this Court, Defendant Michael A. Nordwall, Ltd. was found in default, but the remainder of Plaintiff's previous motions were denied as premature. (Docs. 38, 40). Shortly thereafter, on February 1, 2013, Plaintiff filed the currently pending motions.

### MOTION FOR SUMMARY JUDGMENT

Plaintiff filed a Motion for Summary Judgment against Intervenor, seeking judgment as a matter of law with respect to Intervenor's avoidance counterclaim and asserting there are no disputed material facts and that it should be entitled to foreclose the mortgage. (Doc. 44).

### I. Summary Judgment Standard

Summary judgment shall be granted where "the movant shows that there is no

tion (Doc. 43) is moot and the Court addresses only the Amended Motion (Doc. 52).

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir.2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir.2009).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir.2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir.1997). At the summary judgment stage, the Court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. Background[2]

Defendant Michael A. Nordwall applied for and received a mortgage on a commercial property located at 910 W. Glen Ave., Peoria, Illinois ("Property"). National City Bank of the Midwest was the mortgagee, and Plaintiff is its successor in interest. The mortgage was executed on November 7, 2005, and recorded with the Peoria County Recorder of Deeds on November 17, 2005, as document number 05–38331 ("Mortgage"). (Doc. 1–2 at 2–3). The Mortgage secures a loan evidenced by a promissory note ("Note") dated November 7, 2005, in the amount of $435,200.00, bearing interest at the rate of 6.25% and with a maturity date of November 7, 2010. (Doc. 1–2 at 2). The maturity date was extended to February 7, 2011, pursuant to a Modification Agreement dated November 1, 2010. (Doc. 1–2 at 4–5). Defendant Michael A. Nordwall, Ltd.[3] served as guarantor for the Note as modified. (Doc. 1–2 at 6). The recorded Mortgage includes, *inter alia*, the following information: (1) the name of the mortgagor and mortgagee, (2) the amount of indebtedness secured, (3) the nature of the indebtedness, (4) a legal description of the property subject to mortgage, (5) that the indebtedness was secured by a promissory note, and (6) the signature of the mortgagor. (Doc. 1–3 at 2–3, 13). The Mortgage referenced the Note by amount and date.[4] Defendants defaulted under the terms of the Note and Mortgage, failing to pay the amount due upon its maturity on February 7, 2011.

On March 2, 2011, Defendant filed for relief under Chapter 7 of the Bankruptcy

---

2. Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the Complaint, Intervenor's Answer and Counterclaim, and the parties' statements of facts filed regarding the Motion for Summary Judgment. All genuine disputes and reasonable inferences are taken in Intervenor's favor, as noted above.

3. Because of Defendant Michael A. Nordwall, Ltd.'s limited role in the case, all further

references to Defendant are to Michael A. Nordwall unless otherwise noted.

4. "The word 'Note' means the Promissory Note dated November 7, 2005 in the original principal amount of $435,200.00 from Borrower to Lender, with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement." (Doc. 1–3 at 12).

Code. Intervenor Charles E. Covey serves as Defendant's Chapter 7 Bankruptcy Trustee. On December 14, 2011, Plaintiff filed its Complaint, claiming that it has a valid mortgage lien on the Property and seeking to foreclose the Mortgage. In his affirmative defense and counterclaim, Intervenor seeks to avoid the Mortgage under his "strong arm" powers as bankruptcy trustee under 11 U.S.C. § 544 because the Mortgage failed to include the interest rate and maturity date on its face. He argues that § 11 of the Illinois Conveyances Act, 765 Ill. Comp. Stat. 5/11, requires disclosure of such terms.

## III. Discussion

In its Motion for Summary Judgment, Plaintiff argues it is entitled to judgment based on the undisputed facts. It argues Intervenor's counterclaim is without merit, and that Intervenor cannot avoid the Mortgage pursuant to 11 U.S.C. § 544. In his Response, Intervenor maintains that the two facial deficiencies—the lack of a stated interest rate and maturity date—render the Mortgage avoidable by him as Trustee of Defendant's bankruptcy estate. Further, Intervenor argues that there are disputed facts, particularly over which debt or debts the Mortgage secures.

 Pursuant to the "strong arm" provision of the bankruptcy code, a bankruptcy trustee may avoid a debtor's obligation or a transfer of the debtor's property that is voidable by "a bona fide purchaser of real property." 11 U.S.C. § 544(a)(3). Accordingly, this provision grants to the trustee "the hypothetical status, rights and powers of a bona fide purchaser of real property who has perfected the transfer of real property from the debtor at the time of the bankruptcy filing." *Peterson v. Berg, (In re Berg,)*, 387 B.R. 524, 559 (Bankr.N.D.Ill.2008). Further, because the power is "without

regard to any knowledge of the trustee," 11 U.S.C. § 544(a), a trustee's actual knowledge of the transfer or obligation is irrelevant and does not preclude avoidance. *Sandy Ridge Oil Co. v. Centerre Bank Nat'l Ass'n, (In re Sandy Ridge Oil Co.,)*, 807 F.2d 1332, 1335–36 (7th Cir.1986). However, constructive notice of a lien does prevent a trustee's avoidance. *See id.* at 1336–37. State law determines whether there was constructive notice. *Id.*

Intervenor seeks to invoke § 544(a)(3) on the grounds that the Mortgage does not state the interest rate and maturity date, in violation of § 11 the Illinois Conveyances Act, and therefore, fails to provide constructive notice of the lien. (Doc. 59 at 7–9). As explained herein, this argument fails, and Intervenor cannot avoid the Mortgage.

### A. Construction of the Illinois Conveyances Act

Section 11 of the Illinois Conveyances Act describes a statutory form for mortgages in Illinois. Intervenor argues § 11 sets forth mandatory elements for a valid mortgage, or at least for a mortgage to not be subject to avoidance by a bona fide purchaser; Plaintiff contends the form set forth is permissive. As of Defendant's bankruptcy filing and at all relevant times,[5] the provision stated, in pertinent part:

> Mortgages of lands **may** be substantially in the following form: The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real

**5.** A subsection (b) was recently added and is addressed separately below.

estate (here insert description thereof), situated in the County of ...., [sic] in the State of Illinois.

Dated (insert date).

 (signature of mortgagor or mortgagors)

....

Such mortgage, when otherwise properly executed, shall be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified....

765 Ill. Comp. Stat. 5/11 (2010) (emphasis added).

 In interpreting a state statute, a federal court must apply that state's statutory construction principles. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir.1998). In Illinois, "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the legislature, and that inquiry appropriately begins with the language of the statute." *Metro. Life Ins. Co. v. Washburn*, 112 Ill.2d 486, 98 Ill.Dec. 50, 493 N.E.2d 1071, 1074 (1986). The court looks first to the plain and ordinary meaning of the language. *See People v. Robinson*, 172 Ill.2d 452, 217 Ill.Dec. 729, 667 N.E.2d 1305, 1307 (1996). Where the language is clear and unambiguous, courts "must apply the statute without further aids of statutory construction." *Id.*,

 Section 11 clearly states that a mortgage "may" be in the specified form. 765 Ill. Comp. Stat. 5/11. As opposed to the term "shall," which is mandatory, the term "may" is permissive. *See In re Es-*

*tate of Ahmed*, 322 Ill.App.3d 741, 255 Ill.Dec. 697, 750 N.E.2d 278, 281 (2001). Based on the clear and unambiguous language of the provision, the mortgage terms § 11 sets forth are not required to be included in a mortgage instrument; instead, they are permitted or suggested.[6]

Other courts confronting this issue recently have reached the same conclusion. In a Southern District of Illinois Bankruptcy Court case, a trustee sought to avoid a mortgage, arguing that the omission of the interest rate and maturity date of the underlying indebtedness rendered the mortgage avoidable under 11 U.S.C. § 544(a)(3). *Bruegge v. Farmers State Bank of Hoffman, (In re Klasi, Props., LLC)*, No. 12–60013, 2013 WL 211111, at *1 (Bankr.S.D.Ill. Jan. 18, 2013).[7] The court concluded the legislature did not intend § 11 to "prescribe a 'checklist' of formalistic mortgage requirements"; rather, "its purpose was to create a framework for providing sufficient notice to innocent third parties of interests in property." *Id.* at *7. In another case before the same court presenting the same issue, the court again concluded that the failure to include the terms in § 11 did not invalidate the mortgage, as the provision is permissive. *Bruegge v. WBCMT 2007–C33 Mid Am. Lodging, LLC (In re HIE of Effingham, LLC)*, 490 B.R. 800, 806 (Bankr.S.D.Ill. 2013).[8]

Similarly, in a Central District of Illinois Bankruptcy Court case, the court explained that § 11 creates a "safe harbor" for mortgages that strictly comply with the

---

**6.** Some of the Illinois cases Plaintiff cites, though not analyzing § 11, also support a permissive reading of § 11. For example, an appellate court case lists errors that do not invalidate a mortgage, including "where the description of the note indicates that it bears interest, but fails to specify its rate or the time of payment." *Metro. Life Ins. Co. v. Kobbeman*, 260 Ill.App. 508, 511 (1931).

**7.** *In re Klasi*, was appealed directly to the United States Courts of Appeals for the Seventh Circuit on February 7, 2013, and docketed as case no. 13–cv–01277.

**8.** This case, decided on March 29, 2013, was appealed to the United States District Court for the Southern District of Illinois and docketed as case no. 13–cv–00439.

form set forth in § 11. *Bank of Ill. v. Covey, (In re Shara Manning Props., Inc.,)*, 475 B.R. 898, 910 (Bankr.C.D.Ill. 2010). A recorded mortgage that strictly complies is "deemed" valid and sufficient to give constructive notice. *Id.* However, mortgages that do not strictly comply are not necessarily invalid; they simply are not automatically deemed to provide constructive notice. *Id.*

In a Central District of Illinois District Court decision, again addressing the same issue, the district court reversed a bankruptcy court's order that had allowed the trustee to avoid the mortgage because of its failure to include the interest rate and maturity date. *Gifford State Bank v. Richardson, (In re Crane)*, 487 B.R. 906, 908 (C.D.Ill.2013).[9] The court stated that § 11 was "intended to create a safe harbor, rather than a mandatory checklist of requirements to be completed pro forma." *Id.* at 915. This Court agrees with the reasoning and analysis in these cases and concludes that § 11 of the Conveyances Act is permissive and that failure to include the maturity date and interest rate on the face of a mortgage does not render it invalid, nor does it necessarily mean the mortgage did not give constructive notice of the lien.

Intervenor points to an Illinois Supreme Court case, *Caraway v. Sly*, 222 Ill. 203, 78 N.E. 588, 589 (1906), which states, in dicta, that § 11 "requires" a recitation of the prescribed terms in the mortgage, including the interest rate and due date. *Caraway*, dealt with whether a deed could be considered a mortgage, whereas in the present case a mortgage undoubtedly exists. The court held that the agreement to convey property to secure a loan did not constitute a mortgage because it gave the complainant a mere option to pay, not

because it failed to include an interest rate or maturity date or any other § 11 elements. *Id.* Thus, the language in *Caraway*, may be considered dicta and therefore it is not binding on this Court's analysis, nor is it strongly indicative of how the Illinois Supreme Court would interpret § 11 if faced with this question today, given the plain language of the statute.

Further, it appears the court was simply noting the requirements for a mortgage purporting to be in the statutory form, not that the statutory form is required for all valid mortgages. The court stated:

> Where the conveyance is in the form of a mortgage, it must describe and identify some debt or obligation secured by it, and [§ 11], which **provides for a statutory form** of mortgage, requires that **a mortgage in that form** shall recite the nature and amount of the indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise.

*Id.* (emphasis added). Thus, far from a statement that all mortgages must comply with § 11, the court was stating that a mortgage must describe and identify the debt or obligation and then noting the existence of a statutory form and restating the elements of that statutory form.

Intervenor also cites two cases in which mortgages with missing elements were deemed invalid. In *Bullock v. Battenhousen*, 108 Ill. 28 (1883), the Illinois Supreme Court held that the amount of the indebtedness was required to be stated in the mortgage in order to provide notice. *Id.* at 37. As Intervenor quotes, the court stated "in [§ 11], the form of mortgage there given requires the mortgage to 're-cite the nature and amount of indebtedness.'" *Id.* However, this is preceded by a

---

**9.** The trustee appealed this district court decision to the United States Court of Appeals for the Seventh Circuit. The appeal was docketed on March 8, 2013, as case no. 13–cv–01518.

statement that "[t]he policy, though not the letter, of our statutes requires, in all cases, a statement upon the record of the amount secured." *Id.* Much like in *Caraway*, this indicates that in the quote Intervenor relies upon, the court was stating that to satisfy the form of § 11, the nature and amount of indebtedness are required, not that the statutory form itself is always required. If the court were simply relying on § 11 for the requirement that the debt amount must be in every mortgage, it could have stopped right there instead of proceeding with an analysis of the issue of whether the amount of debt must be stated in every mortgage. Further, its previous sentence stating the letter of the law does not require the amount of indebtedness would be inaccurate.

More recently, the Illinois Appellate Court, citing *Bullock*, concluded that a mortgage that did not state the amount of the indebtedness rendered the document legally insufficient to impart constructive notice of the amount of the lien. *Northridge Bank v. Lakeshore Commercial Fin. Corp.*, 48 Ill.App.3d 82, 8 Ill.Dec. 144, 365 N.E.2d 382, 385–86 (1977). Neither this case nor *Bullock*, discussed whether the interest rate or the maturity date is required for a valid mortgage. Further, both cases are distinguishable from the present case, as the Mortgage here clearly states the amount of indebtedness.[10] Additionally, the court in *Bullock*, after noting the purpose of requiring the amount of indebtedness is to avoid fraud, distinguished cases in which the "debt is described by reference to another instru-

ment." 108 Ill. at 37. In such cases, "full and reliable information" could be attained through "the labor of going to the other instrument." *Id.* In the present case, the Note was referenced in the Mortgage and contained additional information about the loan. Thus, none of the cases Intervenor cites convince the Court that the failure to state an interest rate or maturity date invalidates the mortgage or necessarily means it does not provide sufficient constructive notice to preclude avoidance by a bona fide purchaser.

The Court's conclusion that the form set forth in § 11 is permissive rather than mandatory and failure to include all of the elements does not preclude constructive notice is further buttressed by the recent amendment to the provision.[11] On December 5, 2012, the Illinois legislature passed Public Act 97–1164, adding subsection (b) to § 11, which provides that "[t]he provisions of subsection (a) regarding the form of a mortgage are, and **have always been,** permissive and not mandatory." 765 Ill. Comp. Stat. 5/11(b) (effective June 1, 2013) (emphasis added). Subsection (b) further clarifies that:

[T]he failure of an otherwise lawfully executed and recorded mortgage to be in the form described in subsection (a) in one or more respects, including the failure to state the interest rate or the maturity date, or both, shall not affect the validity or priority of the mortgage, nor shall its recordation be ineffective for notice purposes regardless of when the mortgage was recorded.

---

**10.** "MAXIMUM LIEN. At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $435,200.000." (Doc 1–3 at 2).

**11.** The Court notes that the trustee's rights as a bona fide purchaser pursuant to § 544 vest upon commencement of the bankruptcy case

and that subsequent changes in state law cannot affect the trustee's status. *See,* 11 U.S.C. § 544(a)(3); *In re Crane,* 487 B.R. at 915 (citing *In re Trujillo,* 378 B.R. 526, 538 (6th Cir. BAP 2007)). However, this amendment indicates legislative intent in relation to § 11 and explains rather than changes the statute, and therefore reinforces this Court's reasoning.

*Id.* This is further persuasive authority that the form set forth in § 11 is permissive rather than mandatory.[12]

## B. Constructive Notice

Though the Mortgage does not meet the form in § 11 and thus does not benefit from the safe harbor it creates, the issue of whether the Mortgage provides constructive notice of the lien must still be resolved. Plaintiff argues that the Mortgage is sufficient to provide Intervenor with constructive notice of Plaintiff's interest because (1) the Mortgage is properly recorded, and (2) a simple lien search would disclose Plaintiff's interest to Intervenor. Intervenor counters that the Mortgage fails to impart constructive notice to him because it failed to state the interest rate and maturity date. As explained below, the Court finds, as a matter of law, the Mortgage provided constructive notice of Plaintiff's interest such that Intervenor cannot avoid it.

■■■ Constructive notice is "notice that is deemed to be provided by an instrument of conveyance that is both sufficient in substance and properly recorded in the statutory office designed to maintain land title records for the county in which the subject real estate is located." *In re Shara Manning Props.,* 475 B.R. at 906. Constructive notice can take two forms: record notice and inquiry notice. *US Bank Nat'l Ass'n v. Villasenor,* 365 Ill. Dec. 847, 979 N.E.2d 451, 465 (Ill.App.Ct. 2012). Record notice "imputes to a purchaser knowledge that could be gained from an examination of the grantor-grantee index in the office of the Recorder of Deeds, as well as the probate, circuit, and county court records for the county in which the land is situated." *Goldberg v. Ehrlich, (In re Ehrlich,)* 59 B.R. 646, 650 (Bankr.N.D.Ill.1986). Inquiry notice charges a purchaser with knowledge of facts that he "might have discovered by diligent inquiry." *Miller v. Bullington,* 381 Ill. 238, 44 N.E.2d 850, 852 (1942); *see also Burnex Oil Co. v. Floyd,* 106 Ill. App.2d 16, 245 N.E.2d 539, 544 (1969). "Whether a mortgage instrument is sufficient to impart constructive notice of a prior interest depends upon the quantum of information contained within the document and whether that information is sufficient to place a reasonable person on notice of the prior interest." *In re Klasi Props.,* 2013 WL 211111, at *4. Constructive notice is given by information that would "excite attention" and "put the party on his guard and call for inquiry." *German–Am. Nat'l Bank of Lincoln v. Martin,* 277 Ill. 629, 115 N.E. 721, 729 (1917).

■■■ In the instant case, the Mortgage was recorded with the Peoria County Recorder of Deeds on November 17, 2005. Thus, Intervenor had record notice of its existence and of the terms therein, including the essential term, the amount of indebtedness. The only remaining question is whether the information contained in the Mortgage was sufficient in substance to put Intervenor on notice of Plaintiff's interest, despite its failure to state the interest rate and maturity date.

In *In re HIE of Effingham,* when seven of the nine identifiers enumerated in § 11 were present in the mortgage instrument, the court held it was sufficient to impart constructive notice to the trustee.[13] 490

---

**12.** Even if § 11 of the Conveyances Act were read to be mandatory, the Mortgage may still have been saved through incorporation of the Note by reference. *See In re Crane,* 487 B.R. at 914–15; *In re HIE of Effingham,* 490 B.R. at 820–21; *In re Klasi Props.,* 2013 WL 211111 at *5; *Bullock,* 108 Ill. at 37; *Provident Fed. Sav. & Loan Ass'n v. Realty Ctr.,* *Ltd.,* 101 Ill.App.3d 277, 56 Ill.Dec. 851, 428 N.E.2d 170, 173 (1981), *aff'd,* 97 Ill.2d 187, 73 Ill.Dec. 389, 454 N.E.2d 249 (1983). However, the Court need not address that argument here.

**13.** That mortgage contained the following information: (1) the name of the mortgagor and

B.R. at 817. Similarly, the district court in *In re Crane*, determined a mortgage lacking the interest rate and maturity date still provided constructive notice of the lien. 487 B.R. at 909–14. The Mortgage in this case bears the same seven features present in the mortgage in *In re HIE of Effingham.*[14] The nature and amount of the indebtedness is conspicuously placed on the first two pages of the mortgage. From that document, it was clear Plaintiff's predecessor in interest had a lien on the Property and clearly identified the corresponding November 7, 2005, Note in the amount of $435,200.00. Thus, the Mortgage contains the essential elements of the lien, and provides enough information to put a reasonable person on his guard and invite inquiry as to Plaintiff's interest. The mere failure to also include the interest rate and maturity date of the loan on the face of the Mortgage does not mean Intervenor, as a hypothetical bona fide purchaser did not have constructive notice of Plaintiff's interest. Therefore, Intervenor had constructive notice of Plaintiff's interest in Defendant's Property, and cannot avoid the Mortgage under 11 U.S.C. § 544.

### C. Debts Secured

The Court finally addresses the factual dispute Intervenor points to in his Response. Intervenor contends that there is a dispute over which loans are secured by the Mortgage. He points to Plaintiff's motion to annul the automatic stay, filed in the bankruptcy court to seek permission to proceed with foreclosure, in which Plaintiff claimed the Mortgage secured three loans from its predecessor: (1) a business line of credit agreement dated August 2, 2000, in the amount of $35,000.00; (2) the $435,200.00 promissory note executed on November 7, 2005, against the Property; and (3) an $80,000.00 installment note dated April 17, 2009. (Doc. 59–1 at 1–2). The Mortgage only identifies the $435,-200.000 promissory note, though it also contains a cross-collateralization clause.

Intervenor argues that the question of how many debts the Mortgage secures is material to the disposition of this case. Intervenor contends Plaintiff's previous assertion should be "taken as true," and would therefore invalidate the Mortgage for failing to state all of the indebtedness it apparently secures. However, whether Plaintiff seeks to enforce one or multiple loans is a claim or legal argument, not a fact. Plaintiff has only ever referenced the primary note of November 7, 2005, in the amount of $435,200.00, in its filings with this Court. As evidenced by its Complaint, Plaintiff seeks only to enforce the terms of the November 7, 2005, Note. (Doc. 1 at 3). Plaintiff's previous assertions related to the cross-collateralization clause in the bankruptcy case do not require it to continue with that argument. Intervenor does not argue the mere existence of a cross-collateralization clause invalidates the Mortgage, which it would have to do for its argument to succeed. Intervenor perhaps could argue that Plain-

---

the mortgagee, (2) the nature of the indebtedness, (3) the amount of the indebtedness it secured, (4) that the indebtedness is secured by a promissory note, (5) the legal description of the property subject to the mortgage, and (6) the signature of the mortgagor. *In re HIE of Effingham*, 490 B.R. at 816.

**14.** As noted above, the Mortgage in this case (1) named the mortgagor—Michael A. Nordwall, (2) named the mortgagee—National City Bank of the Midwest, (3) stated the nature of the indebtedness, (4) stated the amount of the indebtedness it secured—$435,200.00, (5) indicated that the indebtedness is secured by a Note dated November 7, 2005, in the principal amount of $435,200.00, (6) included the legal description of the Property at 910 W. Glen Ave., Peoria, IL, 61614, and (7) bore the signature of Michael A. Nordwall. (Doc. 1–3 at 2, 3, 12, 13).

tiff would have legal barriers to enforcing the cross-collateralization clause, but that is not what Plaintiff is trying to do. Intervenor cannot force Plaintiff to take a certain action so that he can argue Plaintiff cannot take that action. There is no dispute over which debt Plaintiff seeks to enforce in this case. Thus, the dispute Intervenor points to is not a genuine dispute of material fact and does not preclude summary judgment.

Therefore, Plaintiff's Motion for Summary Judgment is granted. Intervenor's counterclaim is dismissed, and based on Intervenor's admissions in its Answer and Response to the Motion, it is clear that the undisputed facts show Plaintiff is entitled to foreclose the defaulted Mortgage.

### REMAINING FORECLOSURE MOTIONS

As Intervenor is not entitled to avoid the mortgage under the strong arm provision, and there is no dispute that Defendants have defaulted on the loan, foreclosure is appropriate. The remaining motions relate to the foreclosure, and no responses were filed by any party in opposition.

▉▉▉ Plaintiff seeks default judgment against Defendants for failing to defend against its claim. Pursuant to Federal Rule of Civil Procedure 55(a), the Court entered Defendants' default after they failed to plead or otherwise defend in this matter. The Court entered the default of Defendant Michael A. Nordwall, Ltd. on January 11, 2013. (Docket Entries, Jan. 11, 2013). The Court entered default as to Defendant Michael A. Nordwall on June 20, 2013. (Docket Entries, June 20, 2013). Defendants' liability is thus established, and is no longer in controversy. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir.2007). The well-pled facts of the Complaint are taken as true, and where "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," default

judgment may be entered without a hearing on damages. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983).

Because default has been entered and the amount claimed is ascertainable from documentary evidence, default judgment against Defendants is appropriate. Further, as summary judgment is awarded in Plaintiff's favor against Intervenor, no legal or factual issues remain.

The Court has reviewed Plaintiff's submissions, and has determined that judgment of foreclosure and sale is appropriate. Thus, Plaintiff's Motion for Judgment of Foreclosure is granted. Plaintiff must submit a proposed judgment to the Court within seven days of the date of this Order. Plaintiff also asks the Court to appoint Key Auctions, LLC and Marion J. Valle d/b/a Valle Realty as Special Commissioners to conduct the public sale of the property, pursuant to 735 Ill. Comp. Stat. 5/15–1506(f)(3). As such a request is permissible under Illinois law, and because neither Defendants nor Intervenor have opposed it, the Motion to Appoint Special Commissioner is granted. The Special Commissioners shall conduct the auction in accordance with the Terms and Conditions submitted to the Court (Doc. 46–1). The Court also finds the affidavit that apparently serves as Plaintiff's Motion for Attorneys' Fees adequately supports the requested fees. Thus, Plaintiff's Motion for Attorney Fees is granted, and the judgment will also include the requested $17,113.50 in attorneys' fees and $1,130.70 in costs.

IT IS THEREFORE ORDERED:

1) Plaintiff's Motion for Summary Judgment (Doc. 44) is GRANTED. Intervenor's counterclaim is DISMISSED WITH PREJUDICE.

2) Plaintiff's Amended Motion for Default Judgment (Doc. 52) is GRANTED, and its original Motion for Default Judgment (Doc. 43) is therefore DENIED AS MOOT.

3) Plaintiff's Motion for Judgment of Foreclosure (Doc. 45) is GRANTED. Plaintiff is entitled to a judgment of foreclosure and sale in its favor and against Defendants and Intervenor. Plaintiff SHALL submit a proposed Judgment of Foreclosure and Sale to the Court within seven days of the date of this Order.

4) Plaintiff's Motion to Appoint Special Commissioner (Doc. 46) is GRANTED. Key Auctions, LLC and Marion J. Valle d/b/a Valle Realty are APPOINTED Special Commissioners for the purpose of the sale at public auction of the property that is the subject matter of this action, pursuant to the Terms and Conditions submitted to the Court (Doc. 46–1).

5) Plaintiff's Motion for Attorney Fees (Doc. 48) is GRANTED. The total judgment amount will include attorneys' fees and costs in the amount of $18,244.20.